**In Re David BAIRD, Debtor.**

**WOODWORKING ENTERPRISES, INC., Appellant,**

v.

**David BAIRD, Appellee.**

**BAP No. AZ–89–1492–PRMe.**

**Bankruptcy No. 87–02040–TUC–LO.**

**Adv. No. 87–0284.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 18, 1989.

Decided March 22, 1990.

Karl Macomber, Tucson, Az., for appellant, Woodworking Enterprises, Inc.

Stanley J. Kartchner, Tuscon, Az., for appellee, David Baird.

Before PERRIS, RUSSELL and MEYERS, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

The plaintiff filed an adversary proceeding to except from discharge under section 523(a)(4) a debt incurred through the debtor/defendant's purported breach of trust as a construction contractor with regard to funds allegedly held in a statutory trust for payment to subcontractors. The plaintiff appeals from a summary judgment granted in favor of the defendant. We reverse and remand for further proceedings consistent with this memorandum.

## FACTS

The debtor/defendant/appellee, David Baird ("debtor") is the president and sole shareholder of David J. Baird Construction, Inc. ("Baird Construction") and is the sole signator on the checking account of Baird

Construction. Baird Construction, as part of its construction work, entered into a subcontract with plaintiff/appellee, Woodworking Enterprises, Inc. ("Woodworking"), under which Woodworking agreed to install custom wood cabinets in a residence ("the Garrigan residence").

Woodworking fully performed its obligation under the subcontract. Although the Garrigans paid Baird Construction in full for all work performed on their residence, Baird Construction did not pay Woodworking $11,541.75 for labor and materials provided under the subcontract.

Woodworking and Karl Geissler, its president and sole shareholder, performed approximately 50–60 subcontracting jobs for Baird Construction over a ten year period, for which it billed and collected from Baird Construction approximately $350,000. Baird Construction typically paid Woodworking 60–90 days after being invoiced for construction work and, in the case of the Garrigan residence, paid Woodworking no earlier than 55 days after the invoice date.[1] Contemporaneously with the Garrigan project, Woodworking was subcontracting for Baird Construction on at least two other jobs. Payments received by Woodworking from Baird Construction on the other jobs totalled at least $11,431 and were properly applied to those jobs.

Geissler knew that such payments were from the same checking account as payments received for the Garrigan job, knew that payments Woodworking received from Baird Construction for the Garrigan project may have been made from funds other than those received by Baird Construction from the Garrigans and knew that funds received by Baird Construction from the Garrigans may have been used to pay Woodworking for subcontracting work on other projects. This course of dealing was consistent with the stipulated common practice in the construction industry for general contractors to pay subcontractors out of funds received from various sources and not necessarily only from funds received on a specific job.

After the debtor filed his bankruptcy petition, Woodworking commenced an adversary proceeding alleging that the funds paid by the Garrigans to Baird Construction were trust funds for the benefit of subcontractors on the Garrigan project under A.R.S. § 33–1005 and that debtor's failure to pay it from these funds constituted a defalcation by a fiduciary under section 523(a)(4). On the parties cross-motions for summary judgment, and following Woodworking's motion for new trial and relief from judgment, the bankruptcy court entered a judgment in favor of the debtor on May 9, 1989. Woodworking filed this timely appeal.

## ISSUES

1. Whether A.R.S. § 33–1005 creates a fiduciary relationship for purposes of section 523(a)(4).

2. Whether Baird Construction committed a defalcation under section 523(a)(4) and, if so, whether the debtor, as the corporate officer responsible for accounting for and disbursing funds, is personally liable for the defalcation.

3. Whether Woodworking is precluded from asserting its rights under A.R.S. § 33–1005 by waiver or estoppel.

## STANDARD OF REVIEW

■ An order granting summary judgment is reviewed *de novo*. *In re Marvin Properties, Inc.*, 854 F.2d 1183, 1185 (9th Cir.1988). In reviewing a summary judgment, the task of an appellate court is the same as a trial court under Fed.R.Civ.P. 56 ("Rule 56").[2] *Hifai v. Shell Oil Co.*, 704 F.2d 1425, 1428 (9th Cir.1983). Viewing the evidence in the light most favorable to the non-moving party, the appellate court must determine whether the bankruptcy court correctly found that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.; see* Rule 56(c).

## DISCUSSION

1. *Whether A.R.S. § 33–1005 creates a fiduciary relationship for purposes of section 523(a)(4).*

■ 11 U.S.C. § 523(a)(4) provides that an individual debtor is not discharged from

---

**1.** The contract required payments within 30 days of invoicing.

**2.** Rule 56(c) is made applicable to the instant proceeding by Bankruptcy Rule 7056.

any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." The meaning of "fiduciary capacity" under section 523(a)(4) is a question of federal law, which has consistently limited this term to express or technical trust relationships. *See, e.g., Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). The broad general definition of a fiduciary relationship—one involving confidence, trust and good faith—is inapplicable in the dischargeability context. *E.g., Ragsdale*, 780 F.2d at 796. The debt alleged to be non-dischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982). In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. *E.g., Ragsdale*, 780 F.2d at 796. This requirement eliminates constructive, resulting or implied trusts. *E.g., In re Short*, 818 F.2d 693, 695 (9th Cir.1987).

■■■ Although the concept of "fiduciary" in the dischargeability context is a narrowly defined question of federal law, courts look to state law to determine whether the requisite trust relationship exists. *E.g., Ragsdale*, 780 F.2d at 796–97. If state law creates an express or technical trust relationship between the debtor and another party and imposes trustee status upon the debtor, the debtor will be a fiduciary under section 523(a)(4). *Id.* The statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt. *In re Weedman*, 65 B.R. 288, 291 (Bankr.W.D.

Ky.1986); *see, e.g., In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981). Woodworking contends that A.R.S. section 33–1005, which provides that certain moneys paid to a contractor shall be deemed to be held in trust for the benefit of persons furnishing labor and materials,[3] creates the requisite express trust relationship between Baird Construction and itself because similar statutes have been found to create such a relationship for purposes of section 523(a)(4). The debtor contends that an express trust is not created because the statute does not impose true fiduciary duties such as a segregation requirement.

Many courts have considered whether state statutes create an express trust for purposes of section 523(a)(4) in the context of a subcontractor's rights in construction payments made to a contractor. By examining the various state statutes at issue, the courts have reached divergent results. In general, the statutes construed in such cases can be divided into three groups.

At one end of the spectrum, courts hold that statutes which only impose criminal or other penalties for the failure of a contractor to make a certain disposition of construction funds do not create fiduciary capacity for dischargeability purposes. *See, e.g., Pedrazzini, supra,* (California law); *In re Cross*, 666 F.2d 873 (5th Cir.1982) (Georgia law); *In re Angelle*, 610 F.2d 1335 (5th Cir.1980) (Louisiana law); *In re Dloogoff*, 600 F.2d 166 (8th Cir.1979) (Nebraska law); *but see In re Romero*, 535 F.2d 618 (10th Cir.1976) (criticized in *Pedrazzini* and *Angelle, supra* ). These courts reason that any trust relationship that is created by such statutes does not arise prior to and independently of the wrong. At the other end of the spectrum,

**3.** Section 33–1005 reads as follows:

"Monies paid by or for an owner-occupant as defined in § 33–1002 to a contractor, as defined in § 32–1011, as payment for labor, professional services, materials, machinery, fixtures or tools for which a lien is not provided in this article shall be deemed for all purposes to be paid in trust and shall be held by the contractor for the benefit of the person or persons furnishing such labor, professional services, materials, machinery, fixtures or tools. Such monies shall neither be diverted

nor used for any purpose other than to satisfy the claims of those for whom the trust is created and shall be paid when due to the person or persons entitled thereto. The provisions of this section shall not affect other remedies available at law or in equity."

Woodworking cannot claim a lien against the Garrigan residence and section 33–1005 is therefore applicable because Woodworking does not have a direct contractual relationship with the Garrigans, the owner-occupants of the residence. *See* §§ 33–1002.A–33–1002.B.

courts hold that statutes which expressly designate the funds received by the contractor as trust funds and which explicitly impose specific and detailed duties on the contractor regarding the funds create a fiduciary relationship for dischargeability purposes. *See, e.g., In re Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977) (cited with approval in *Pedrazzini, supra*).[4]

Between the two ends of the spectrum are cases, such as this one, dealing with statutes which refer to the funds as trust funds but which do not explicitly impose specific and detailed duties upon the contractor with respect to those funds. *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980) (Oklahoma law), *In re Johnson, supra* (Michigan law), and *In re Martin,* 35 B.R. 982 (Bankr.E.D.Pa.1984) (Delaware law) found the requisite trust relationship under statutes, similar to the statute at issue in this case. The Ninth Circuit has indicated that such statutes create true fiduciary relationships for dischargeability purposes. *Pedrazzini,* 644 F.2d at 759.

On the other hand, *In re Boyle,* 819 F.2d 583 (5th Cir.1987) (Texas law) and *In re Rausch,* 49 B.R. 562 (Bankr.D.N.J.1985) (New Jersey law) determined that the requisite trust relationship did not exist under similar, but not identical statutes. *Rausch* is not persuasive authority because it relied exclusively on the reasoning of *Angelle, supra,* notwithstanding the fact that the statute construed in *Rausch* specifically provided that the moneys paid to a contractor shall constitute trust funds while the statute construed in *Angelle* provided only for a criminal penalty if the contractor misapplied the funds. The Texas statute at issue in *Boyle* prohibits only the fraudulent misapplication of trust funds. In other relevant respects, the Texas statute is similar to those considered in *Carey Lumber Co.* and *Johnson.*[5]

The statute at issue is the same, for all relevant purposes as the Oklahoma and Michigan statutes considered in *Carey Lumber Co.* and *Johnson.* Like the Oklahoma and Michigan statutes, A.R.S. section 33–1005 creates a trust in favor of those persons who furnish the labor and materials for which the payment to the contractor is made and expressly prohibits the diversion or use of the funds for any purpose other than to satisfy the claims of those for whom the trust is created.[6] Unlike the Texas statute and like the Oklahoma and Michigan statutes, section 33–1005 does not limit this prohibition to fraudulent diversions of trust funds. Finally, although section 33–1005 does not expressly obligate the fund holder to maintain the separate identity of any trust res, does not require the segregation of funds and does not impose bookkeeping obligations, neither do the Oklahoma or Michigan statutes.

■ Under the reasoning of *Carey Lumber Co.* and *Johnson,* we determine that A.R.S. section 33–1005 creates an express or technical trust sufficient to find a fiduciary relationship for purposes of section

---

**4.** In *Kawczynski,* the statute under consideration required, *inter alia,* the contractor to segregate and keep detailed records of the funds received and disbursed.

**5.** Another distinguishing factor is that the Texas statute indicates that the Texas Trust Act does not apply to a trust created under the construction trust statutory scheme. 3 Tex.Prop.Code Ann. § 162.004(b). It is doubtful, however, that this distinction is of much legal significance because the Texas Trust Act discloses no general requirements imposed on trustees with regard to segregation or bookkeeping. *See* Texas Trust Act, Tex.Rev.Civ.Stat.Ann. Art. 7425b–1, *et seq.*

**6.** Debtors argument that, like the Texas statute, section 33–1005 does not prohibit the contractor from using funds on other projects is not well taken. Section 33–1005 states that the "monies paid ... as payment for labor, professional services, materials, machinery, fixtures or tools ... [shall be held in trust] for the benefit of the person or persons furnishing such labor, professional services, materials, machinery, fixtures or tools." Because the trust arises in favor of only those furnishing the labor, materials and the like for which the payments are made, the clear import of the language is that the trust arises only in favor of those working on the project for which the payments are made. The trust is not for the benefit of laborers or materialmen on other projects. Because section 33–1005 expressly provides that the monies shall not be used for non-trust purposes, there is a prohibition of the use of funds on other projects.

523(a)(4). To the extent *Boyle* is indistinguishable from *Carey Lumber* and supports a contrary result, we find it unpersuasive.

2. *Whether Baird Construction committed a defalcation under section 523(a)(4) and, if so, whether the debtor, as the corporate officer responsible for accounting for and disbursing funds, is personally liable for the defalcation.*

 A defalcation is a failure of a party to account for money or property that has been entrusted to them. *E.g., In re Cowley*, 35 B.R. 526, 529 (Bankr.D.Kan. 1983). In the context of section 523(a)(4), the term "defalcation" includes innocent, as well as intentional or negligent defaults so as to reach the conduct of all fiduciaries who were short in their accounts. *In re Gonzales*, 22 B.R. 58, 59 (9th Cir. BAP 1982). The debtor contends that there was no defalcation because Baird Construction and the debtor fully complied with section 33–1005 by using the funds received from various projects to pay the subcontractors on the various projects and that in any event, he cannot be held liable for a defalcation by his corporation. Debtor's arguments are not well taken.

The clear import of section 33–1005 is that the trust arises only in favor of those working on the project for which the payments are made. *See* note 6, *supra*. To give the statute the construction offered by the debtor would render the trust ineffectual as a device for protecting the rights of laborers and materialmen who supply goods and services on owner occupied residential real property and would be contrary to the language of the statute.[7] Common industry practice and accounting burdens are not a basis for disregarding the plain language of the statute and the protections offered by the statute, as urged by the debtor.

In this case, the evidence with respect to a defalcation is that the Garrigans paid Baird Construction in full and that Baird Construction and the debtor did not pay Woodworking in full. This evidence establishes a *prima facie* case that the debtor and/or Baird Construction failed to account for the moneys held in trust for the subcontractors on the Garrigan project. The debtor having failed to rebut this showing by presenting evidence to account for the trust funds by their application solely to those providing goods and services on the Garrigan residence, we conclude that a defalcation occurred.

The next question is whether the debtor should be held responsible for the defalcation. Section 33–1005 imposes "fiduciary capacity" only upon a contractor, which in this case is Baird Construction. Woodworking argues that the debtor is personally liable because he directly and actively participated in the breach of trust as the corporate officer responsible for disbursing funds. The debtor argues that he cannot be personally liable because there is insufficient evidence to allow Woodworking to pierce the corporate veil.

 Debtor's argument overlooks the principle that a corporate officer or director who engages in tortious conduct is personally liable for the tort, notwithstanding the fact that the officer may have acted on behalf of the corporation. *See, e.g., In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir.1985); *see also Bischofshausen, Vasbinder and Luckie v. D.W. Jaquays Mining and Equipment Contractors Co.*, 145 Ariz. 204, 211, 700 P.2d 902, 909 (App.1985). This principle applies regardless of the piercing of the corporate veil. *See Interstate Agency, Inc.*, 760 F.2d at 125. Under this principle, an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss. *E.g., Seven G Ranching Co. v. Stewart Title and Trust*, 128 Ariz. 590, 593, 627

---

7. Laborers and materialmen who work on commercial and non-owner occupied real property may protect themselves through use of construction lien statutes. *See generally* A.R.S. §§ 33–981 *et seq.* Those who work on owner occupied real property, however, are deprived of the benefit of the construction lien statutes, *see* A.R.S. § 33–1002, and must be protected by the trust set forth in section 33–1005.

P.2d 1088, 1091 (App.1981). In the context of dischargeability determinations under section 523(a)(4), various courts have held that where a corporation is a trustee, a corporate officer who knowingly causes the misappropriation of the trust property is personally liable for a breach of trust committed by the corporation even if the officer did not personally profit from the transaction. *See, e.g. In re Currin,* 55 B.R. 928, 935 (Bankr.D.Colo.1985); *In re Koszuth,* 43 B.R. 104, 107 (Bankr.M.D.Fla.1984); *see also Interstate Agency, Inc., supra.* As the court stated in *Koszuth,* 43 B.R. at 108,

> A corporation acts only through its officers or employees. When a corporation as an entity is placed in a fiduciary capacity it is the corporate officer who is charged with performing the fiduciary duties and living up to the terms of the agency. If the fiduciary relationship is not imposed upon the corporate officer charged with maintaining the fiduciary relationship, then § 523(a)(4) could be rendered meaningless in cases where the fiduciary relationship is established between a creditor and a corporate fiduciary only. All a debtor would have to do to avoid § 523(a)(4) is place the corporation in the position as the fiduciary rather than himself.

█ In this case, it is undisputed that the debtor is the only person responsible for disbursing funds held by Baird Construction. Thus, the debtor directly and actively participated in the defalcation and can be held personally liable in an action under section 523(a)(4).[8]

3. *Whether Woodworking is precluded from asserting its rights under A.R.S. § 33–1005 by waiver or estoppel.*

█ The debtor contends that Woodworking is precluded from asserting its rights under section 33–1005 by the doctrines of waiver and estoppel because Woodworking routinely accepted late payments and because of the accepted course of dealing between the parties whereby Woodworking did not insist upon segregation of funds and knew that payments received for the various jobs may not have come from funds received by Baird Construction on that particular job.

There are genuine issues of fact which prevent summary judgment for either party on the issue of whether Woodworking waived or is estopped from asserting its rights under section 33–1005. The fact that Woodworking accepted payments on various jobs when it knew that the payments may have come from funds Baird Construction received for other jobs and the fact that Woodworking did not insist that Baird separately account for moneys are not dispositive on whether Woodworking intentionally relinquished its rights under the statute as is required for a finding of waiver.[9] *See, e.g., Goglia v. Bodnar,* 156 Ariz. 12, 749 P.2d 921 (App.1987). Similarly, there is no evidence regarding whether Baird Construction or the debtor

---

**8.** The authorities cited by the debtor do not compel a contrary result. Many of the cases cited by the debtor deal with piercing the corporate veil and did not deal with a contention that the debtor was personally liable because he engaged or participated in the wrongful conduct. *See, e.g., In re Nash,* 60 B.R. 27 (9th Cir. BAP 1986). *In re Long,* 774 F.2d 875 (8th Cir.1985) declined to impose personal liability on a corporate officer under section 523(a)(4) in the absence of a statute or state law rule charging the corporate officer with a corporation's fiduciary duties. *The debtor is correct that section 33–1005 is distinguishable from the Oklahoma statute considered in Carey Lumber Co.* in the sense that the Arizona statute does not make the managing officer liable for the breach of trust. Nevertheless, Arizona common law charges corporate officers participating in a breach of trust with the corporation's fiduciary duties by mak-

ing such officers liable for the breach of trust. *See Seven G Ranching Co.,* 128 Ariz. at 593, 627 P.2d at 1091.

**9.** The debtor also argues that Woodworking waived its rights under section 33–1005 by agreeing to accept as payment of its claim the proceeds of a lawsuit by Baird Construction against a third party. To the extent the debtor argues that this is an accord and satisfaction, its argument must fail because Woodworking did not receive any payment from the proceeds of the lawsuit and the original obligation is therefore not extinguished. *See, e.g., Owens v. Hunter,* 91 Ariz. 7, 9–11, 368 P.2d 753, 755 (1962). Similarly, Woodworking's agreement to accept a promise of substitute performance would not waive its rights if the promise of substitute performance is not fulfilled.

relied to its detriment on the conduct of Woodworking in accepting late payments or in accepting payments from funds that may have come from other projects. *See Graham v. Asbury*, 112 Ariz. 184, 185–86, 540 P.2d 656, 657–58 (1975) (setting forth the elements of estoppel).

## CONCLUSION

Section 33–1005 creates a fiduciary relationship for purposes of section 523(a)(4) and the debtor, as the corporate officer responsible for accounting for and disbursing funds, can be held personally liable for the defalcation which occurred. We cannot, however, determine that the debt is excepted from discharge under section 523(a)(4) because there is insufficient evidence to support a summary judgment for either party on whether Woodworking is precluded, by waiver or estoppel, from asserting its rights under A.R.S. § 33–1005. Accordingly, we reverse the summary judgment in favor of the debtor and remand for further proceedings consistent with this memorandum.[10]

---

**10.** On remand, the bankruptcy court should consider, *inter alia*, Woodworking's contention that it is entitled to attorneys fees if it prevails in its dischargeability action.