242 F.3d 1186 (9th Cir. 2001)
 In re: CHRISTOPHER BAGWELL HEMMETER and PATRICIA KELLEY HEMMETER, Debtors.
JOHN B. BLYLER; MALCOLM J. CORSE, on behalf of themselves and all others similarly situated,Plaintiffs-Appellants,
v.
CHRISTOPHER BAGWELL HEMMETER, Defendant-Appellee.
 No. 99-55777
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 12, 2000
Filed March 26, 2001
 
 [Copyrighted Material Omitted]
 Ellen M. Doyle and Rudy A. Fabian, Pittsburgh, Pennsylvania; Marvin L. Rudnick, Pasadena, California; J. Brian McTigue, Chevy Chase, Maryland; John C. Grabow, Ketchum, Idaho, for the appellants.
 Alan J. Kornfield, Los Angeles, California, for the appellee.
 Appeal from the United States District Court for the Central District of California Consuelo B. Marshall, District Judge, Presiding. D.C. No.CV-98-03640-CBM
 Before: Betty B. Fletcher, Warren J. Ferguson and Sidney R. Thomas, Circuit Judges. Opinion by Judge Thomas
 THOMAS, Circuit Judge:
 
 
 1
 This appeal presents the question of whether ERISA plan fiduciaries are also fiduciaries within the meaning of 11 U.S.C. S 523(a)(4). We conclude that they are, but that the specific allegations of breach of ERISA fiduciary duties do not constitute defalcations within the meaning of 11 U.S.C. S 523(a)(4).
 
 
 2
 * Morrison Knudsen Corporation ("MK") was a large, publicly-held, engineering and construction company headquartered in Boise, Idaho. After an economic downturn, it filed a voluntary Chapter 11 bankruptcy petition in 1996 and was ultimately acquired by Washington Construction Group, Inc., under a confirmed reorganization plan. After the termination of its defined benefits pension plan in 1987, MK established two pension plans for the benefit of its employees: the Morrison Knudsen Corporation Employee Stock Ownership Plan ("ESOP Plan") and the Morrison Knudsen Corporation Savings Plan ("401K Plan").
 
 
 3
 The MK Board of Directors, of which resort developer Christopher Hemmeter was a member, and an Administrative Committee comprised of no fewer than three MK employees were the named fiduciaries of the ESOP plan. Mellon Bank, N.A., was the trustee of the ESOP plan assets during the relevant period. Shortly after establishing the plan, MK purchased approximately 1.2 million shares of MK common stock to be held by the ESOP in a suspense account, but periodically allocated to individual ESOP participant accounts.
 
 
 4
 The named fiduciaries of the 401K Plan were the members of an Administrative Committee comprised of no fewer than three MK employees. Hemmeter did not, at any time, serve on the Administrative Committee. The plan documents authorized the fiduciaries of the 401K Plan to invest primarily in MK stock. To that end, restricted and unrestricted MK stock funds were established as part of the 401K Plan. The trustee for the 401K Plan during the relevant period was T. Rowe Price Trust Company.
 
 
 5
 By December 1993, the ESOP owned approximately two million shares of MK stock valued at approximately $52 million; the 401K Plan owned over one million shares of MK stock valued at almost $24 million. Those values were based on a price of $25.12 per share on December 31, 1993. By July 14, 1994, the share price had dropped to $20.88; a week later the price plummeted to $15.75 per share. By the end of 1994, MK shares were trading at $12.75 a share. The ESOP Plan was terminated on May 10, 1995. The 401K stock was sold in 1996 for $1.40 per share.
 
 
 6
 In 1997, after the MK bankruptcy reorganization, the ESOP and 401K plan participants filed a federal class action in the District of Idaho against the MK Board of Directors, members of the Administrative Committee, T. Rowe Price Trust Company, Mellon Bank, N.A., and others. The class action sought recovery of retirement account losses allegedly resulting from breaches of fiduciary duties in connection with administration of the plans. Plaintiffs Blyler and Corse were designated as class representatives.
 
 
 7
 In 1997, Hemmeter and his spouse filed a voluntary Chapter 7 bankruptcy petition for reasons unrelated to MK's economic downturn. As class representatives, Blyler and Corse (collectively "Plan Participants") filed an adversary proceeding pursuant to 11 U.S.C. SS 523(a)(4) and 727(b) alleging that the losses associated with the ESOP and 401K Plans were non-dischargeable debts. The bankruptcy court issued findings of fact and conclusions of law granting Hemmeter's motion to dismiss for failure to state a claim upon which relief could be granted.[1] The district court affirmed. This timely appeal followed.
 
 
 8
 We review a bankruptcy court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) de novo. Dominguez v. Miller (In re Dominguez), 51 F.3d 1502, 1506 (9th Cir. 1995). "Our review is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff." Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1990)."Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would enti-tle him to relief." Id. (internal quotation and citation omitted).
 
 II
 
 9
 The Plan Participants object to the discharge of their claimed debt under S 523(a)(4) of the Bankruptcy Code, which provides that a debtor may not be discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C.S 523(a)(4).
 
 
 10
 Whether a person is a fiduciary under S 523(a)(4) is a question of federal law. Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996) (citing Ragsdale v. Haller (In re Haller), 780 F.2d 794, 795 (9th Cir. 1986)). The origins of the fiduciary capacity discharge exception date to the Bankruptcy Act of 1841. 5 Stat 440. From 1884 to the present, courts have construed "fiduciary" in the bankruptcy discharge context as including express trusts, but excluding trusts ex maleficio, i.e., trusts that arose by operation of law upon a wrongful act. Davis v. Aetna Corp., 293 U.S. 328, 333 (1934); Chapman v. Forsyth, 2 How. 202, 208 (1844). We have adhered to this construction in interpreting the scope of 11 U.S.C. S 523(a)(4), refusing to deny discharge to those whose fiduciary duties were established by constructive, resulting and implied trusts. Runnion v. Pedrazzini (In re Padrazzini), 644 F.2d 756, 758 (9th Cir. 1981); Schlecht v. Thornton (In re Thornton), 544 F.2d 1005, 1007 (9th Cir. 1976)."The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing." Runnion, 644 F.2d at 758.
 
 
 11
 Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under S 523(a)(4). Quaif v. Johnson, 4 F.3d 950, 953-54 (11th Cir. 1993); Runnion, 644 F.2d at 758 n.2. In general, a statutory fiduciary is considered a fiduciary for the purposes of S 523(a)(4) if the statute: (1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing. Cf. Windsor v. Librandi, 183 B. R. 379, 383 (M.D.Pa. 1995) (discussing whether a fiduciary under state securities act qualifies as a fiduciary under S 523). See also Runnion, 644 F.2d at 759.
 
 
 12
 Before us is the question of whether fiduciaries under the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (1974) ("ERISA") also constitute fiduciaries under S 523(a)(4). The ERISA definition of "fiduciary" provides in relevant part that "[a ] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii)he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. S 1002(21)(A). The trust res is identified by the creation of the plan itself. 29 U.S.C. S 1102. ERISA also defines the fiduciary's fund management duties. See, e.g., 29 U.S.C. SS 11031104. These duties necessarily arise upon creation of an ERISA plan and predate the creation of any debt to the plan participant creditor. Unlike the statutes at issue in Runnion, 644 F.2d at 759, ERISA imposes obligations on the fiduciary prior to the alleged wrongdoing. Thus, ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under S 523(a)(4). Morgan v. Musgrove (In re Musgrove), 187 B.R. 808, 814 (B.N.D.Ga. 1995).
 
 
 13
 The Plan Participants allege sufficient facts in their complaint that Hemmeter was a fiduciary within the provisions of ERISA. The complaint alleges that Hemmeter was a member of the MK Board of Directors, which was a named fiduciary of the ESOP plan. Thus, the Plan Participants' allegations concerning Hemmeter's ERISA fiduciary duties as to the ESOP Plan are sufficient to withstand Rule 12(b)(6) scrutiny. While Hemmeter was not a named fiduciary of the 401K Plan, the Plan Participants allege that he was a member of the MK board of directors when it wrongfully terminated and transferred the assets of the 401K Plan. Construing this allegation in the light most favorable to the plaintiffs, which we must, it sufficiently alleges an ERISA fiduciary duty to pass muster under a Rule 12(b)(6) analysis.
 
 III
 
 14
 Holding that statutory ERISA fiduciaries qualify as fiduciaries under S 523(a)(4) does not end our inquiry. We must also decide whether the violations of those duties alleged in the complaint are viable claims for defalcation under S 523(a)(4). The definition of defalcation includes both the "misappropriation of trust funds or money held in any fiduciary capacity; [and the] failure to properly account for such funds." Lewis, 97 F.3d at 1186 (quoting Black's Law Dictionary 417 (6th ed. 1990)). Even innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations; no intent to defraud is required. F.D.I.C. v. Jackson, 133 F.3d 694, 703 (9th Cir. 1998); Lewis, 97 F.3d at 1186.
 
 
 15
 However, regardless of the mens rea required, the essence of defalcation in the context of S 523(a)(4) is a failure to produce funds entrusted to a fiduciary. Quaif , 4 F.3d at 954. This concept does not embrace the normal acts within the business judgment of the fiduciary that, however flawed, do not involve failure to account for or produce a beneficiary's funds. Thus, we have declined to extend the concept of defalcation to include the acts alleged by the Plan Participants. There are no allegations of accounting failure or misappropriation. Rather, the Plan Participants allege only damagesresulting from a decline in value of the MK stock, in which the Plans were specifically authorized to invest.[2] Thus, although we have as yet not fully defined the contours of defalcation under S 523(a)(4), the breach of duties alleged by the Plan Participants with respect to the ESOP and 401K Plans does not amount to a "defalcation while acting in a fiduciary capacity" within the meaning of S 523(a)(4).
 
 IV
 
 16
 In sum, the Plan Participants' allegation that Hemetter was acting in a fiduciary capacity are sufficient to survive a Rule 12(b)(6) analysis. However, the alleged acts of "defalcation" under S 524(a)(4) do not. Because amendment of the complaint would not save it from dismissal, the entry of an order of dismissal without leave to amend was proper. Griggs v. Pace Amer. Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999). Thus, we affirm the judgment of the district court, albeit on a different rationale.
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 The bankruptcy court's order granting dismissal contained factual findings which, of course, would be inappropriate in the context of a dismissal under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6) for failure to state a claim upon which relief could be granted. However, on closer inspection, the "factual findings" were mere recitations of the salient portions of plaintiffs' complaint. Viewed in context, both the bankruptcy court and the district court decided the legal questions within the four corners of plaintiffs' complaint. Thus, consideration under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6) was proper.
 
 
 [2]
 Not only do both the 401K and ESOP Plans authorize the investment, but ERISA recognizes that an "employee stock ownership plan is designed to invest primarily in qualifying employer securities." 29 U.S.C. S 1107(d)(6)(A). For this reason, under normal circumstances, courts do not consider ESOP fiduciaries to have a duty to diversify investments, regardless of how prudent that decision might be. Moench v. Robertson, 62 F.3d 553, 568 (3d Cir. 1995).