In re Peter MUNTON, Debtor.

T & D Moravits & Co., Appellant,

v.

Peter Munton, Appellee.

BAP No. SC–05–1314–SRyMa.
Bankruptcy No. 03–05103.
Adversary No. 03–90314.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted by Telephone Conference on July 14, 2006.

Filed Sept. 28, 2006.

John Z. Shafai, Beverly Hills, CA, Attorney for T & D Moravits & Co.

Judith A. Descalso, Escondido, CA, Attorney for Peter Munton.

Before: SMITH, RYAN [1], and MARLAR, Bankruptcy Judges.

## OPINION

SMITH, Bankruptcy Judge.

An unpaid subcontractor sought to except from discharge debt incurred by debtor through the alleged breach of fiduciary duty arising from the misapplication of statutory trust funds. The bankruptcy court denied its motion for summary judgment and this appeal followed.[2] We REVERSE and REMAND.

## I. FACTS

T & D Moravits & Co. ("Moravits"), a concrete subcontractor, provided materials and services to Ryan Companies US, Inc. dba Ryan Midwest Construction Co. for the construction of townhouses owned by CPWH Resident, Ltd. ("CPWH"), a Texas limited partnership. The principals of CPWH are Richard P. Richmond ("Richmond") and Peter Munton ("Munton" or "Debtor"). Washington Mutual Bank, F.A. ("Bank") financed the project and

---

1. Hon. John E. Ryan, United States Bankruptcy Judge for the Central District of California, sitting by designation.

2. The BAP granted leave to appeal this interlocutory order on November 29, 2005.

disbursed the loan proceeds directly to CPWH based upon invoices presented by the subcontractors. CPWH, however, failed to pay over these funds to certain subcontractors.

In March 2002, subcontractor Concept General Contracting, Inc. filed a suit in Texas state court against CPWH and Richmond for nonpayment. Moravits filed a petition in intervention against Munton alleging, among other claims, that he violated the Texas Construction Trust Fund Statute[3] (the "state court action"). Munton did not respond to the state court action and, as a result, in May 2002, a default judgment was entered in the amount of $168,813.31 (the "default judgment"). The default judgment provided that Munton "violated the Texas statute and breached fiduciary duties."

In May 2003, Munton filed a chapter 7 petition. Thereafter, Moravits timely commenced a complaint for nondischargeability pursuant to § 523(a)(4)[4]. Debtor answered with a general denial and pled various affirmative defenses.

Moravits filed a motion for summary judgment ("MSJ"), requesting that the bankruptcy court give collateral estoppel effect to the default judgment and determine the debt nondischargeable.

Relying heavily on the Fifth Circuit's decision in *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110 (5th Cir.1992), Debtor responded that under the Texas statute, an express trust (within the meaning of § 523(a)(4)) is only established upon specific findings that a contractor misapplied funds covered under

---

3. The Texas Construction Trust Fund Statute (sometimes referred to herein as the "Texas statute") is set forth under Chapter 162 of the Texas Property Code.

> Section 162.001(a) provides
> (a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.
> Section 162.002 states
> A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds.

Pursuant to § 162.031, the Texas statute is triggered by

> (a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

The following provisions also provide for a "safe harbor" for certain uses of these trust funds (affirmative defenses):

> (b) It is an affirmative defense to prosecution or other action brought under [s]ubsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.
> (c) It is also an affirmative defense to prosecution or other action brought under Subsection (a) that the trustee paid the beneficiaries all trust funds which they are entitled to receive no later than 30 days following written notice to the trustee of the filing of a criminal complaint or other notice of a pending criminal investigation.

4. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date (October 17, 2005) of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005).

the statute. Because no such findings were made, there was no per se violation of the Texas statute, hence, the elements of § 523(a)(4) were not satisfied by the default judgment alone.

Moravits disputed the application of *Nicholas,* arguing that in *Nicholas,* unlike in the instant case, there were no prior state court findings that the debtor had violated the Texas statute. Moravits further argued that Ninth Circuit law, and not that of the Fifth Circuit, applied. In *Nicholas,* the Fifth Circuit imposed upon the plaintiff the burden of *disproving* the existence of affirmative defenses. *Id.* at 114. Specifically, the court found that because the plaintiff had failed to establish, in Texas, the absence of affirmative defenses under the Texas statute, no trust relationship existed for purposes of § 523(a)(4). *Id.* By contrast, in *Otto v. Niles (In re Niles),* 106 F.3d 1456 (9th Cir.1997), the Ninth Circuit held that the burden of establishing affirmative defenses remains with the defendant debtor.

The bankruptcy court agreed *with* Moravits that the default judgment conclusively determined that Debtor had violated the Texas statute by not paying over the funds he received from the Bank to Moravits for that purpose. In addition, the court found that the affirmative defense was not an element of a cause of action brought pursuant to the Texas statute. However, in choosing to adopt the reasoning in *Nicholas,* the court held that for there to be a § 523(a)(4) violation, Moravits would need to establish not only a breach of the construction trust fund provision of the Texas statute, but also a breach of § 523(a)(4). In order to establish a breach of § 523(a)(4), the court indicated that Moravits would have to produce evidence which proved that Debtor was in a fiduciary relationship within the meaning of § 523(a)(4), which he breached by knowingly or purposely misapplying the loan proceeds under the Texas statute.

Based on its decision, the bankruptcy court granted summary adjudication in Moravits' favor as to there being a breach of the Texas statute by Debtor. However, because the court believed that a material issue still remained as to whether Debtor had the specific knowledge or intent to misapply the loan proceeds, it offered Moravits the opportunity to either advance the matter to trial on the issue of the misapplication of trust funds or to appeal the denial of summary judgment.

Moravits filed a notice of appeal from the denial order, and the BAP granted leave to appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and §§ 157(b)(1) and (b)(2)(I). We have jurisdiction under 28 U.S.C. §§ 158(b)(1) and (c)(1).

## III. ISSUE

Whether a default judgment, finding a violation of the Texas Construction Trust Fund Statute, is entitled to collateral estoppel effect in a § 523(a)(4) nondischargeability action.

## IV. STANDARD OF REVIEW

■ We review a decision concerning a motion for summary judgment *de novo. Consol. Marketing, Inc. v. Marvin Props., Inc. (In re Marvin Props., Inc.),* 854 F.2d 1183, 1185 (9th Cir.1988); *Woodworking Enters., Inc. v. Baird (In re Baird),* 114 B.R. 198, 201 (9th Cir. BAP 1990). The task of an appellate court in reviewing a summary judgment matter is the same as a trial court under Fed.R.Civ.P. 56[5]. *Hi-*

---

5. Fed.R.Civ.P. 56(c) is made applicable to the instant proceeding by Fed. R. Bankr.P. 7056.

*fai v. Shell Oil Co.,* 704 F.2d 1425, 1428 (9th Cir.1983). In this case, we must determine whether the bankruptcy court correctly found that there was a genuine issue of material fact. *Id.; see also* Fed. R.Civ.P. 56(c).

■ We also review *de novo* the bankruptcy court's decision on the availability of collateral estoppel. *Baldwin v. Kilpatrick (In re Baldwin),* 245 B.R. 131, 134 (9th Cir. BAP 2000).

■ Whether a person is a "fiduciary" for purposes of § 523(a)(4) is a question of law also reviewed de *novo. Lovell v. Stanifer (In re Stanifer),* 236 B.R. 709, 713 (9th Cir. BAP 1999).

## V. DISCUSSION

A. *Affirmative Defenses Not Raised in a Prior State Court Action May Not be Asserted in a Subsequent Dischargeability Proceeding*

■ The doctrine of collateral estoppel, or issue preclusion, applies in dischargeability proceedings to preclude the re-litigation of state court findings relevant to dischargeability. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). We apply the issue preclusion principles of the state from which the judgment originates. *Cal–Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1123 (9th Cir.2003).

■ Under Texas law, issue preclusion may be applied where 1) the facts sought to be litigated were fully and fairly litigated in a prior proceeding; 2) the same facts were essential to the judgment in the prior action; and 3) the parties were adversaries in the prior action. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex. 1984). The Fifth Circuit, interpreting Texas law on the doctrine, has held that, as to default judgments, the fully and fair-

ly litigated requirement is satisfied only where the state court 'has conducted an evidentiary hearing prior to the entry of the default judgment. *Pancake v. Reliance Ins. Co. (In re Pancake),* 106 F.3d 1242, 1244 (5th Cir.1997).

■ Without challenging the efficacy of the Fifth Circuit's interpretation, we note that under Texas law a default judgment represents an admission of the facts properly alleged in the plaintiff's petition. *Stoner v. Thompson,* 578 S.W.2d 679, 684– 85 (Tex.1979). Moreover, a defendant must plead, prove, and secure findings of any affirmative defenses. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). When a defendant fails to answer, he provides no evidence to support any affirmative defenses. *Love v. State Bar,* 982 S.W.2d 939, 943 (Tex.App.1998). Therefore, a defendant who fails to answer waives any affirmative defenses. *Id.; see also Stoner,* 578 S.W.2d at 684–85; *Simon v. BancTexas Quorum, N.A.,* 754 S.W.2d 283, 286 (Tex.App.1988); *Lakeside Leasing Corp. v. Kirkwood Atrium Office Park Phase 3,* 750 S.W.2d 847, 850 (Tex.App. 1988). We, therefore, conclude that, under Texas state law, Debtor is precluded, from asserting in the dischargeability action, any affirmative defenses that could have, and should have, been raised in connection with the state court action.

B. *The Texas Construction Trust Fund Statute Creates a Fiduciary Relationship for Purposes of § 523(a)(4)*

Section 523(a)(4) provides that an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

■ "Fiduciary capacity" is defined and governed by federal law, which narrowly restricts the term to fiduciary relationships that arise from express or techni-

cal trusts. *Lee–Benner v. Gergely (In re Gergely)*, 110 F.3d 1448, 1450 (9th Cir.1997)(quoting *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986)); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996). The broad general definition of a fiduciary relationship, i.e., a relationship of confidence, trust or good faith, is not relevant in the dischargeability context. *Ragsdale*, 780 F.2d at 796.

 Though the definition of "fiduciary capacity" is guided by federal law, we look to state law to determine whether the requisite trust relationship exists. *Id.* A debtor will be deemed a fiduciary if state law creates an express or technical trust relationship which imposes trustee status upon the debtor. *Id.; see also Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir.2001)("Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under § 523(a)(4)."). Generally, a trust exists where the statute defines the res, sets forth the fiduciary duties, and imposes a trust prior to, and without reference to, the wrong for which the debt arose. *In re Hemmeter*, 242 F.3d at 1190. This general principle applies to state construction trust fund statutes.[6] *See In re Faulkner*, 213 B.R. at 665.

 In *Baird*, a case involving Arizona law, we surveyed the murky landscape of published decisions grappling with the application of state-created contractor trusts to the federal standard of "fiduciary" within the context of § 523(a)(4):

At one end of the spectrum, courts hold that statutes which only impose criminal or other penalties for the failure of a contractor to make a certain disposition of construction funds do not create fiduciary capacity for dischargeability purposes. These courts reason that any trust relationship that is created by such statutes does not arise prior to and independently of the wrong. At the other end of the spectrum, courts hold that statutes which expressly designate the funds received by the contractor as trust funds and which explicitly impose specific and detailed duties on the contractor regarding the funds create a fiduciary relationship for dischargeability purposes.

Between the two ends of the spectrum are cases, such as this one, dealing with statutes which refer to the funds as trust funds, but which do not explicitly impose specific and detailed duties upon the contractor with respect to those funds.... The Ninth Circuit has indicated that such statutes create true fiduciary relationships for dischargeability purposes.

114 B.R. at 202–03 (citations omitted).

In our analysis of cases involving trust fund statutes with no specific trustee duties, we closely reviewed two important decisions from the Fifth Circuit in light of the BAP's decision in *Baird*. In *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980), we observed that while the applicable Oklahoma statute did not impose specific trustee duties, the Fifth Circuit nevertheless found that it "expressly pro-

---

**6.** Construction fund statutes, common in many states, purport

to raise a "trust" in favor of subcontractors or suppliers against contractors who have received payment on a given job ahead of them. The trust is discharged when the contractor applies the monies it receives towards the payment of these subcontrac-

tors or suppliers. Such statutes, while couched in trust language, may, but do not necessarily, create the requisite fiduciary relationship for purposes of section 523(a)(4) analysis.

*Airtron, Inc. v. Faulkner (In re Faulkner)*, 213 B.R. 660, 665 (Bankr.W.D.Tex.1997).

hibits the diversion or use of [trust] funds for any purpose other than to satisfy the claims of [beneficiaries]," thereby creating a fiduciary relationship for purposes of dischargeability. *In re Baird,* 114 B.R. at 203–04. We distinguished *Carey Lumber* from the Fifth Circuit's subsequent decision in *Boyle v. Abilene Lumber, Inc. (In re Boyle),* 819 F.2d 583 (5th Cir.1987), a case involving an earlier version of the Texas statute in which the court determined that the requisite trust relationship did not exist, explaining that the statute only prohibited the *fraudulent* misapplication of trust funds. *In re Baird,* 114 B.R. at 203–04. As such, to the extent that *Boyle* was indistinguishable from *Carey Lumber* and supported a contrary result, we were unpersuaded by the *Boyle* analysis. *Id.*

Subsequent to our decision in *Baird,* the Texas statute was expanded to include both the "intentional" and "knowing" diversion of trust funds.[7] The Fifth Circuit re-examined the statute under *Nicholas* and determined that *Boyle* remained good law. *In re Nicholas,* 956 F.2d at 113. It opined that although the amended statute was significantly broadened, it still did not rise to the level of *Carey Lumber* or *Baird.* *Id.* According to *Nicholas,* the Texas statute, unlike *Carey Lumber* (Okla-

homa law) and *Baird* (Arizona law), failed to create an express trust because it did not require the segregation of funds. *Id.* The statute, instead, excused the general misapplication of trust funds if it was found that they were used to pay "actual expenses directly related to the construction or repair of [an] improvement." Tex Prop.Code Ann. § 162.031(b). The Fifth Circuit, in interpreting the Texas statute in the context of dischargeability, effectively shifted the burden of proof onto the plaintiff to not only prove that funds were paid to the defendant for the benefit of plaintiff—but that the funds were misapplied. *Id.* It concluded that the Texas statute created a *limited* trust for purposes of § 523(a)(4) that only arose where the funds were found to be misapplied (retained, used, or diverted to any use other than "actual expenses directly related to the construction or repair of [an] improvement").[8] *Id.* at 113. We decline to follow the Fifth Circuit.

In *Baird,* we found that the Arizona statute created fiduciary duties for purposes of dischargeability even though the statute itself, like in *Carey Lumber* (Oklahoma law), did not expressly oblige the contractor to maintain the separate identity of any of the funds, nor did the law

---

7. The Texas statute was amended in 1987 to broaden the scienter requirements to include "intentional" and "knowing" diversion of funds, and to create affirmative defenses. Tex Prop.Code Ann. § 162.031(a); *In re Nicholas,* 956 F.2d at 112.

8. We note that the Fifth Circuit's rationale contravenes well established bankruptcy case law that the trust cannot be created as a result of the debt. *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Lewis,* 97 F.3d at 1185.

In *Faulkner,* a bankruptcy case from the Western District of Texas, the court grudgingly followed *Nicholas,* but pointed out that

One may quibble with the Fifth Circuit's analysis on this point, as it seems to *raise* the trust only in the event the debtor *acts* in a fashion prohibited by the statute, seemingly permitting an action to be brought on what amounts to a trust *ex maleficio.* Nonetheless, this court is constrained to follow what it views to be binding precedent. The Fifth Circuit has, in effect, carved out a special exception from its general rule regarding trusts *ex maleficio* (which are generally not actionable under section 523(a)(4)) for trusts "raised" by the conduct of contractors in misapplying funds subject to Texas' construction trust fund statute.

213 B.R. at 665 n. 9.

require segregation or separate bookkeeping obligations. 114 B.R. at 203. Nevertheless, we found that because the Arizona statute prohibited diversion or use of trust funds for any other purpose other than to satisfy the claims of beneficiaries, a trust was created for purposes of § 523(a)(4). *Id.* at 203–04.

In examining the current version of the Texas statute post-*Boyle*, we find that the amended statute has been sufficiently enlarged to create fiduciary duties for purposes of dischargeability. As noted above, in *Baird*, we observed that the earlier statute was limited to the fraudulent misapplication of funds. *See In re Baird*, 114 B.R. at 203 ("The Texas statute at issue in *Boyle* prohibits only the fraudulent misapplication of trust funds. In other relevant respects, the Texas statute is similar to . . . *Carey Lumber Co.*"). We believe, however, that as the scienter requirements have been broadened, the Texas statute is now substantively indistinguishable from the Oklahoma and Arizona statutes, and therefore, is now in line with *Carey Lumber* and *Baird*. Thus, the Texas statute sufficiently satisfies the "fiduciary capacity" requirements for purposes of § 523(a)(4).

The Texas statute, as amended, exhibits the characteristics of a traditional trust relationship as established by the Ninth Circuit. A trust exists where the statute: (1) defines the res; (2) sets forth the fiduciary duties; and (3) imposes a trust prior to the wrong for which the debt arose. *See In re Hemmeter*, 242 F.3d at 1190; *see also Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 759 n. 2 (9th Cir.1981). The Texas statute clearly defines the trust res, i.e. construction payments made to a contractor "under a construction contract for the improvement of specific real property in [Texas]." TEX. PROP.CODE ANN. § 162.001(a). The Texas statute imposes

fiduciary duties by prohibiting the intentional use or retention of the trust funds without first paying all obligations owed to the beneficiaries. *Id.* § 162.031(a). Contrary to the holding in *Nicholas*, proof that the trustee used trust funds, that were not paid to the beneficiaries, to pay related expenses is relevant only to determine if the trustee breached his fiduciary duty, and not whether the Texas statute creates a trust. *Id.* §§ 162.031(a) & (b). Finally, the Texas statute imposes the trust upon receipt of the trust funds, prior to any wrongful conduct by the trustee. *Id.* § 162.002.

■ In addition, in the Ninth Circuit, under *Niles*, 106 F.3d at 1462, it has been established that the creditor bears the burden of proving that the debtor was a fiduciary to whom funds had been entrusted. The burden then shifts to debtor "to account fully for all funds received . . . for [creditor's] benefit, by persuading the trier of fact that she complied with her fiduciary duties . . . ." *Id.*

Here, Moravits satisfied its burden of proof by establishing that Debtor was a fiduciary to whom funds had been entrusted under the Texas statute. The bankruptcy court erred when it applied *Nicholas* and determined that it was Moravits' burden to disprove Debtor's affirmative defenses, i.e., that the loan proceeds were not used to pay expenses allowed under Tex. Prop.Code § 162.031(b), as it is contrary to Ninth Circuit law.

C. *The Record Supports a Finding of Defalcation for Purposes of § 523(a)(4)*

■ A defalcation is a "failure of a party to account for money or property that has been entrusted to them." *In re Baird*, 114 B.R. at 204. For purposes of § 523(a)(4), defalcation includes "innocent, as well as the intentional or negligent de-

**716**

faults so as to reach the conduct of all fiduciaries who were short in their accounts." *Id.*

The bankruptcy court found that Debtor failed to account for loan proceeds received and not paid to Moravits:

> THE COURT: I'm satisfied as of this point in time of the following: that is, the Texas court made a determination expressly that it had both subject matter and in personam jurisdiction over the parties, including [Debtor]; secondly, it found and granted the judgment for breach of the construction trust fund provisions of the Texas law, chapter 162, reflecting that funds were paid to the general contractor CPWH; that the funds were not paid to the plaintiff, Moravits. And that's what appears to be the elements of a cause of action under the construction trust fund provision.

Transcript of Proceeding, April 2, 2004.

As the record supports a finding of defalcation under § 523(a)(4), we conclude that all the elements under § 523(a)(4) have been satisfied.

## VI. CONCLUSION

For the foregoing reasons, the bankruptcy court's order denying the motion for summary judgment is REVERSED and REMANDED with instructions to enter an order granting summary judgment in favor of Moravits.