NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1401-KiTaD |
| FLORENCE TOMASI and WILLIAM S. TOMASI, | Bk. No.   10-16174-MT |
| Debtors. | Adv. No.  10-1446-MT |
| WILLIAM S. TOMASI, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| THE SAVANNAH N. DENOCE TRUST, | |
| Appellee. | |

Argued and Submitted on May 15, 2013
at Pasadena, California

Filed - August 15, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

_____

Appearances:   Kevin Hunter Park, Esq. of Gray Duffy LLP argued
for appellant, William S. Tomasi; Allan Herzlich,
Esq. of Herzlich & Blum, LLP argued for appellee,
The Savannah N. Denoce Trust.

_____

Before: KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Appellant, debtor William S. Tomasi, Esq. ("Tomasi"), appeals a judgment from the bankruptcy court determining that the debt of appellee, the Savannah N. Denoce Trust ("Trust"), was excepted from discharge under 11 U.S.C. § 523(a)(4)[2] for Tomasi's defalcation while acting in a fiduciary capacity.  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

We begin by noting that Tomasi's record on appeal is woefully inadequate.  He failed to include nearly all of the documents underlying the state court proceedings upon which he makes a majority of his arguments.  He also failed to include many of the documents he filed in the bankruptcy court.  An appellant who attacks the trial court's findings or conclusions on appeal must include in the record all the evidence on which the court may have based its findings or conclusions. See Fed. R. App. P. 10(b); Bourke v. City of San Diego, 1997 WL 75571, at *1 (9th Cir. Feb. 17, 1997)(citing Thomas v. Computax Corp., 631 F.2d 139, 141 (9th Cir. 1980)).  Based on his inadequate record, we are entitled to presume that any missing portions are not helpful to his position.  Gionis v. Wayne (In re Gionis), 170 B.R. 675, 680-81 (9th Cir. BAP 1994).  We are also entitled to summarily affirm or dismiss his appeal.  Cmty. Commerce Bank v. O'Brien (In re O'Brien), 312 F.3d 1135, 1137 (9th Cir. 2002). Nonetheless, because of the gravity of the issue, we exercise our discretion to review the bankruptcy court's judgment based on what

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

little record Tomasi has provided and the partial record submitted by the Trust.

The Trust was created by Douglas J. Denoce ("Denoce") as an irrevocable trust in 1999, for the sole benefit of his minor daughter, Savannah. In December 2000, then-trustee William J. Houser, Esq., acquired a condominium in Simi Valley, California ("Simi Valley Property") as a Trust investment. The Simi Valley Property was acquired from a former client of Denoce's at a sheriff's sale for $5,000.

Denoce and Tomasi met in 2003, at which time Tomasi was retained to defend Denoce against criminal charges, including driving under the influence. The men also entered into a business relationship in which Denoce, a California attorney disbarred in 1997, would perform legal work for Tomasi in exchange for compensation.

In 2004, Denoce asked Tomasi to serve as trustee of the Trust and Tomasi accepted. At that time, the Trust assets consisted of two pieces of real property: the Simi Valley Property and a property located in Westlake Village.[3] Both properties were free of any encumbrances or mortgages. During this time, Tomasi sold

[3] Tomasi contends the Simi Valley Property was never part of the Trust. This contention contradicts the findings by the state court, the California Court of Appeal and the bankruptcy court that it was Trust res when Tomasi took over as trustee. Tomasi has not provided any evidence in the record to refute this finding, including what he says proves his contention — copies of page 1 of the Trust and the sheriff's deed to the Simi Valley Property, which Tomasi claims shows that it was taken in the name of Mr. Houser and not in the name of the Trust. Tomasi has not met his burden as appellant to provide an adequate record to show that this finding was clearly erroneous. Kritt v. Kritt, 190 B.R. 382, 387 (9th Cir. BAP 1995). Therefore, we conclude that the Simi Valley Property was part of the Trust at all pertinent times, and we reject Tomasi's arguments to the contrary.

-3-

his Porsche to Denoce for $50,000. Denoce paid Tomasi a $24,000 down payment towards the total purchase price. The Trust alleged that after agreeing to sell the Porsche to Denoce, Tomasi quitclaimed the Simi Valley Property to himself to provide collateral for the payment of the balance of the purchase price for the Porsche and for a $60,000 loan he used to pay off personal credit card debt. The quitclaim deed, executed on October 21 and recorded on October 22, 2004, identifies the Trust as "Grantor" and Tomasi as "Grantee."

In or around November 2007, the relationship between the two men soured due to Tomasi's alleged abandonment of Denoce in criminal cases where Tomasi was his attorney of record. Stanley G. Hilton, Esq.,[4] a San Francisco attorney, was then appointed trustee of the Trust in place of Tomasi.

In December 2008, Denoce, individually, and the Trust filed a first amended complaint against Tomasi in state court alleging multiple causes of action, including various probate code violations, breach of fiduciary duty (under which plaintiffs alleged six separate counts) and a demand for an accounting.[5]

Tomasi demurred to the first amended complaint. On February 5, 2009, the state court issued a minute order tentatively sustaining the demurrer without leave to amend certain causes of action, including the ninth — the breach of fiduciary

---

[4] Stanley G. Hilton, Esq., California bar no. 65990, was subsequently disbarred in June 2012.

[5] Denoce's individual claims against Tomasi, which included claims for breach of an employment agreement and professional malpractice, were apparently resolved by jury trial in Tomasi's favor in April 2010. These claims are not at issue.

-4-

duty claims (count nos. 2-6). The state court set another hearing for March 5, 2009, to finalize its ruling on Tomasi's demurrers.

On February 28, 2009, while the state court's final ruling on the demurrers was pending, the Trust moved for summary judgment on its claims in the first amended complaint, including the ninth cause of action for breach of fiduciary duty, counts 2-6 ("First MSJ").

On March 5, 2009, the state court adopted its February 5, 2009 tentative ruling as the final ruling on Tomasi's demurrers. Tomasi filed his answer to the first amended complaint on April 20, 2009.

In his opposition to the First MSJ, filed on May 1, 2009, Tomasi opposed summary judgment on the basis that the Trust failed to support it with any admissible evidence, and on the basis that triable issues of material fact existed as to all of the Trust's claims, including the ninth cause of action and its separate counts for breach of fiduciary duty and his failure to account. Notably, Tomasi did not assert as a defense that the ninth cause of action was stricken on his prior demurrer in March 2009.

On May 22, 2009, the Trust re-filed its summary judgment motion on the first amended complaint with the required evidence ("Re-filed MSJ"). In support, the Trust offered Tomasi's discovery responses.[6] At his deposition, Tomasi had stated:

Q. Didn't you appear on behalf of the Trust as attorney for the Savannah N. DeNoce Trust?

---

[6] Tomasi failed to include any of the documents filed in the Re-filed MSJ in the record. Nonetheless, the following portions of his discovery answers were quoted by the Trust in its response brief to the California Court of Appeal, which the Trust has provided in its excerpts of the record.

-5-

A. I think I did at some point, yeah.

Q. There's more than just acting as Trustee. You actually appeared as attorney of record for the Trust in some cases, didn't you?

A. Yeah, I think I did.

Q. You went to law school. What's your understanding of being a Trustee? Tell me your understanding.

A. It's been a long time since I was in law school.

Q. You know what, why don't you just tell me what your understanding of being a Trustee is now?

A. I really can't give you a definition for that.

Q. Don't have any idea? Is it a fiduciary relation?

A. Probably, yeah.

Q. So you had fiduciary duties to the trust maybe?

A. Apparently so ....

A. That's a tough question to answer. I do remember from law school that to be a Trustee, a Trustee would hold property for the benefit of another. I do remember that much. I think you can't waste the corpus of the Trust. I do remember that much. Excuse me. Those are the big ones.

In his written requests for admission, Tomasi stated:

RFA #1: You were Trustee of The Savannah N. DeNoce Trust.

Answer: Admit.

RFA #4: You did not obtain a Certificate of Independent review, pursuant to Probate Code § 21351 regarding your transfer of Savannah N. DeNoce real property to yourself individually.

Answer: Admit.

RFA #5: While you were Trustee of the Savannah N. DeNoce Trust you encumbered the trust real property by using it as collateral for a loan.

Answer: Admit.

RFA #8: You used The Savannah N. DeNoce Trust real

-6-

property to finance the sale of your Porsche 911 Carerra to the Plaintiff.

Answer: Admit.

RFA #10: Demand was made on behalf of Plaintiff prior to filing this action that you return the Savannah N. DeNoce real property by quit claiming it back to the trust.

Answer: Admit.

RFA #11: You have not returned the Trust real property you quit claimed to yourself.

Answer: Admit.

RFA #12: The Savannah N. DeNoce Trust real property continues to remain in your name individually.

Answer: Admit.

RFA #13: Demand was made on behalf of Plaintiff prior to filing this action that you remove the encumbrance you caused to be placed against Savannah N. DeNoce Trust property.

Answer: Admit.

RFA #14: The encumbrance you caused to be placed against The Savannah N. DeNoce real property remains.

Answer: Admit.

When questioned at his deposition regarding the whereabouts of the loan proceeds Tomasi had obtained against the Simi Valley Property, he replied:

Q. That would still leave another $8,000 unaccounted for. There was $33,000 to borrower.

A. So?

Q. Where did the other $8,000 go?

A: Who cares?

On June 9, 2009, while the Re-filed MSJ for the first amended complaint was pending, a second amended complaint was filed, but the allegations concerning the Trust were not changed. Tomasi

-7-

moved to strike the second amended complaint on the ground that it included the previously dismissed ninth cause of action for breach of fiduciary duty.

On July 16, 2009, Tomasi filed an ex parte application under CAL. CODE CIV. PROC. § 437c(h), the equivalent to Civil Rule 56(d), to continue the hearing on the Re-filed MSJ based on the Trust's failure to produce evidence on the existence of an express trust.

On July 22, 2009, he raised for the first time an argument based on the state court's ruling granting his demurrer to the ninth cause of action without leave to amend. In each place where he was to respond to a statement of material fact, Tomasi wrote in "ninth cause of action stricken. I don't have to respond."

On August 11, 2009, the state court entered a minute order tentatively granting the Re-filed MSJ in its entirety, subject to further evidence from the parties on damages. Immediately following the August 11 hearing, counsel for the Trust served Tomasi's counsel with a copy of the Trust documents, which had been previously ordered filed under seal. Tomasi's counsel had declined when first given the opportunity to review the Trust documents in May 2009.

In light of the state court's ruling on the Re-filed MSJ, Tomasi filed a motion for relief from default or judgment on August 17, 2009. Tomasi sought leave to oppose the Re-filed MSJ on the ninth cause of action for breach of fiduciary duty. He contended that the court's ruling granting the Re-filed MSJ contradicted its prior minute orders from February and March 2009 dismissing that claim. The Trust opposed Tomasi's motion.

After receiving the parties' further briefing on the issue of

-8-

damages, the state court entered its ruling on the Re-filed MSJ on September 18, 2009. It determined that the Trust had met its burden on all five counts of the ninth cause of action for breach of fiduciary duty (counts 2-6), as well as its claims for quiet title and for an accounting. The state court found that, based on Tomasi's answers to discovery, he was liable for slander of title because the Simi Valley Property belonged to the Trust, and that Tomasi had breached his fiduciary duties to the Trust when he intentionally transferred the property to himself for his own gain and for the purpose of selling and financing the sale of his own car for profit.[7] Specifically, the state court found that Tomasi had breached (1) CAL. PROBATE CODE § 16002[8] because the transaction was not in the best interest of the beneficiary of the Trust, it was in Tomasi's best interest, (2) CAL. PROBATE CODE § 16004[9] by

---

[7] In its ruling, the state court found:

Defendant's responses to requests for admission and other discovery admit all of the evidentiary facts necessary to support these causes of action [citation omitted]. His attempt to contradict his discovery responses in a new declaration cannot defeat a summary judgment [citation omitted].
. . . .
Defendant was well aware of his fiduciary duties to the Trust and its beneficiary. Defendant verified, both in his discovery responses, and in his deposition, that he was the Trustee of Trust, as well as the Trust attorney. Most of what has previously been admitted by Defendant is now disputed in his declaration, which the court disregards to the extent it contradicts prior discovery responses [citation omitted].

[8] CAL. PROBATE CODE § 16002(a) provides that a "trustee has a duty to administer the trust solely in the interest of the beneficiaries."

[9] CAL. PROBATE CODE § 16004 provides in relevant part:

(continued...)

-9-

using trust property for his own profit — to sell his own car, and (3) CAL. PROBATE CODE § 16040[10] for failure to administer the Trust with care. Finally, the state court found that Tomasi had breached CAL. PROBATE CODE § 21350[11] by the improper transfer of the Trust res to himself and CAL. PROBATE CODE § 859[12] by a wrongful

---

[9](...continued)
(a) The trustee has a duty not to use or deal with trust property for the trustee's own profit or for any other purpose unconnected with the trust, nor to take part in any transaction in which the trustee has an interest adverse to the beneficiary.

[10] CAL. PROBATE CODE § 16040 provides in relevant part:

(a) The trustee shall administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument.

[11] CAL. PROBATE CODE § 21350 provides in relevant part:

(a) Except as provided in Section 21351, no provision, or provisions, of any instrument shall be valid to make any donative transfer to any of the following:
. . . .
    (4) Any person who has a fiduciary relationship with the transferor, including, but not limited to, a conservator or trustee, who transcribes the instrument or causes it to be transcribed.

[12] CAL. PROBATE CODE § 859 provides:

If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to the estate of a decedent, conservatee, minor, or trust, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered by an action under this part. The remedy provided in this section shall be in addition to any other remedies available in law to a trustee, guardian or conservator, or personal representative or other successor in interest of a decedent.

-10-

taking of Trust property. Based on the evidence submitted, the state court determined that the Trust was also entitled to an accounting. In its discussion on damages, the state court found, "from the totality of the evidence, including Mr. Tomasi's response at his deposition regarding where the proceeds of the loan went, 'Who cares,' to constitute bad faith for the purposes of the claims of slander of title and appropriate Probate Code violations which require such a finding."

Also on September 18, 2009, the state court entered its ruling denying Tomasi's motion for relief from default or judgment. Tomasi did not provide a copy of his motion or of this ruling in the record, but the state court did comment on why it denied relief in its ruling on the Re-filed MSJ. First, Tomasi had failed to show what facts might exist to support yet another opposition to the Re-filed MSJ. Second, the allegations asserted by the Trust were the same in both the first and second amended complaints. Finally, although the February 5 minute order indicated that the court had sustained the demurrer without leave to amend with respect to the ninth cause of action in the first amended complaint, the state court believed the February 5 transcript made clear that it had intended sustaining the demurrer only with respect to Denoce's cause of action for breach of fiduciary duty, not the Trust's. The state court further noted that Tomasi's first opposition, filed in May 2009, failed to raise as a defense that the demurrers to the breach of fiduciary duty causes of action against the Trust, which had been decided in February and March 2009, were sustained without leave.

A judgment consistent with the state court's ruling on the

-11-

Re-filed MSJ was entered on October 29, 2009 ("State Court Judgment"). The Trust was awarded $318,000 in damages for Tomasi's wrongful taking of Trust property (which he was ordered to return) and return of the profit he made from the sale of the Porsche, plus $160,000 in attorney's fees (reduced from the approximately $220,000 requested by the Trust), for a total judgment of $478,000. The court further awarded the Trust costs upon submission of a Memorandum of Costs.

Tomasi's subsequent motions for reconsideration, writ of mandate, writ of supersedeas and his motion for a new trial were denied. He appealed the State Court Judgment on December 23, 2009.

**B. Postpetition events**

    **1. Appeal of the State Court Judgment and the Trust's motion for summary judgment**

Tomasi and his wife filed a chapter 7 bankruptcy case on May 23, 2010. The Trust filed a timely complaint against Tomasi seeking a determination that the State Court Judgment was excepted from discharge under § 523(a)(2) and/or (a)(4) and to deny Tomasi (and his wife) a discharge under § 727(a)(2), (a)(3), (a)(4) and (a)(5).[13] Tomasi's answer denied all of the Trust's allegations and noted that the State Court Judgment was on appeal.

On February 4, 2011, the Trust moved for summary judgment on its § 523 claims (the "§ 523 MSJ"). Tomasi opposed the § 523 MSJ, contending that the Trust was not entitled to summary judgment because the State Court Judgment did not satisfy the elements of

---

[13] The § 727 claims were later dismissed and are not part of this appeal.

issue preclusion: the issues were not identical, the issues in the prior proceeding were not actually litigated or necessarily decided, and the decision in the prior proceeding was not final as Tomasi's appeal remained pending.

On February 15, 2011, Tomasi moved for relief from stay to pursue his appeal of the State Court Judgment with the California Court of Appeal. Relief was granted, and appellate briefing ensued.[14]

On October 27, 2011, the California Court of Appeal issued its decision affirming the State Court Judgment. Regarding Tomasi's liability for breach of fiduciary duty to the Trust, the appellate court upheld the state court's ruling, reiterating that the undisputed evidenced showed: the Trust owned the Simi Valley Property; Tomasi, as trustee, quitclaimed the property to himself; Tomasi refused to return the property to the Trust; Tomasi encumbered trust property for his own personal gain; Tomasi profited from the sale of the Porsche; Tomasi paid his personal credit card debts with proceeds from a loan on the Simi Valley

_____

[14] While Tomasi's appeal to the California Court of Appeal was pending, the Trust sued Tomasi (and two alleged transferees) in state court for fraudulent transfer. Several months prior to entry of the State Court Judgment, but during his litigation with the Trust and Denoce, Tomasi had executed grant deeds conveying his interest in certain properties to his brother and father-in-law. Just after the state court had entered its ruling on the Re-filed MSJ on September 18, 2009, but before it had entered the State Court Judgment on October 29, 2009, Tomasi recorded the grant deeds on September 29 in an apparent attempt to make himself "judgment proof." The Trust recorded its abstract of judgment on November 9, 2009. After filing bankruptcy, Tomasi's brother and father-in-law executed grant deeds in June 2010 transferring back to Tomasi his interest in the properties.
On July 11, 2011, the state court found Tomasi liable for the fraudulent transfers. Absent the automatic stay, the state court determined that the Trust was entitled to a judgment of approximately $45,000.

-13-

Property; the Trust had demanded an accounting and Tomasi had refused to provide one. The appellate court agreed that Tomasi's evidence offered in opposition to the Re-filed MSJ was merely, and improperly, offered to defeat his prior contradictory discovery admissions. Tomasi's subsequent petitions for rehearing and review before the California Supreme Court were denied.

**2. Ruling on the § 523 MSJ**

With the State Court Judgment now final, proceedings on the § 523 MSJ resumed. Tomasi apparently filed a further opposition to the § 523 MSJ, but did not include it in the record. In its reply to Tomasi's opposition to the § 523 MSJ, the Trust rejected Tomasi's contention that the State Court Judgment was a "default judgment." To the contrary, Tomasi had filed two oppositions to the Trust's motion, a motion for reconsideration, a motion for a new trial, a writ of mandate, a writ of supersedeas, an appeal of the State Court Judgment, a petition for rehearing of that appeal, and, when it was denied, Tomasi filed a petition for review with the California Supreme Court, which also was denied. Furthermore, the issue of whether it was a "default judgment" was fully litigated before the court of appeal and rejected. Nonetheless, argued the Trust, even if it were a true default judgment, in California a default judgment satisfies the "actually litigated" prong for the application of issue preclusion. The Trust contended that all other requirements for issue preclusion were also met — the defalcation issue was identical, it was necessarily decided in the prior proceeding, the State Court Judgment was final and on the merits, and the defendant party was the same.

The bankruptcy court held a hearing on the § 523 MSJ on

-14-

April 18, 2012. Counsel for Tomasi contended that summary judgment under § 523(a)(4) was precluded because the state court and court of appeal never reviewed a copy of the Trust and never made a finding that an express trust existed. The court asked counsel why it would be revisiting this factual issue when Tomasi had taken the State Court Judgment all the way up to the California Supreme Court and had, presumably, raised this issue. Tomasi's counsel replied that he had raised the issue, but, due to the voluminous record, he believed the court of appeal never got a "handle on the record." Counsel equated the State Court Judgment to a default judgment that deprived Tomasi of due process. In his opinion, the state court had entered judgment in favor of the Trust based on his lack of opposition to the ninth cause of action in his opposition to the Re-filed MSJ, which he admitted was a tactical decision done in reliance on the February and March 2009 minute orders sustaining Tomasi's demurrer to that cause of action without leave to amend. After hearing further argument from the parties, the bankruptcy court decided to allow further briefing on the matter and continued it to May 30, 2012. The matter was again continued to July 2012.

The Trust filed a response to Tomasi's sur-reply,[15] as well as a copy of the Trust under seal. The Trust argued that an express trust did exist, as evidenced by the document. It disputed Tomasi's contention that alleged outstanding tax liens against Denoce invalidated the Trust, an argument the state court had

---

[15] Tomasi apparently filed a sur-reply and a further sur-reply in opposition to the § 523 MSJ on April 11 and May 2, 2012, but he did not include these in the record.

-15-

considered and rejected. The Trust also disputed Tomasi's newly-raised argument about the "odd" procedural posture of the Re-filed MSJ, whereby the state court conducted a second hearing on damages. The Trust argued that the procedure was not prejudicial and, in fact, Tomasi had requested the separate damages hearing. The Trust further disputed Tomasi's contention that actual fraud must be found for a claim under § 523(a)(4); a defalcation was sufficient. Finally, the Trust disputed Tomasi's contention that the equities weighed in his favor. The Trust was essentially broke after being forced into years of litigation to get back the Simi Valley Property and to be made whole for Tomasi's defalcation.[16]

Tomasi filed another sur-reply, contending that the Trust was a scam by Denoce to avoid federal and state tax liens, and that fraud in a fiduciary capacity had not been actually litigated and necessarily decided by the state court.

On July 10, 2012, the bankruptcy court entered a memorandum decision granting the § 523 MSJ on the Trust's § 523(a)(4) claim for Tomasi's defalcation.[17] Determining that the elements of issue preclusion had been met, the court ruled that the Trust was entitled to summary judgment on the State Court Judgment.

The bankruptcy court entered an order granting the § 523 MSJ on July 20, 2012. Prior to a judgment being entered, Tomasi filed

---

[16] Due to expenses associated with the litigation, the Trust asserts that it had to sell the Simi Valley Property to pay attorney's fees, and it has had to heavily mortgage the Westlake Property to pay for the additional attorney's fees on appeal.

[17] The bankruptcy court denied the Trust's § 523(a)(2) claim for fraud. The Trust has not appealed this ruling.

-16-

a timely motion for reconsideration of the court's order granting the § 523 MSJ. It was denied for "cause" on July 30, 2012. Tomasi's premature notice of appeal was deemed timely once the bankruptcy court entered a judgment in accordance with its order and memorandum decision granting the § 523 MSJ on August 30, 2012. Rule 8002(a).

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). Initially, Tomasi's appeal of the Judgment was premature as the Trust's § 727 claims had not yet been resolved by judgment. However, by way of an order entered on October 24, 2012, those remaining claims were dismissed. Therefore, the Judgment is now final, and we have jurisdiction under 28 U.S.C. § 158. See Anderson v. Allstate Ins. Co., 630 F.2d 677, 680 (9th Cir. 1980)(notice of appeal from an order disposing of fewer than all claims against all parties that is not certified under Civil Rule 54(b) may be rendered effective by subsequent events such as final disposition of the remaining claims); Wolkowitz v. FDIC (In re Imperial Credit Indus., Inc.), 527 F.3d 959, 971 n.12 (9th Cir. 2008)(citing Anderson).

## III. ISSUE

In granting summary judgment to the Trust on its § 523(a)(4) claim, did the bankruptcy court err in determining that issue preclusion was available, or abuse its discretion in applying issue preclusion to the State Court Judgment?

## IV. STANDARDS OF REVIEW

We review de novo the preclusive effect of a judgment; whether issue preclusion is available is a mixed question of law

-17-

and fact in which the legal questions predominate. The Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 554 (9th Cir. BAP 2002); Stephens v. Bigelow (In re Bigelow), 271 B.R. 178, 183 (9th Cir. BAP 2001). If issue preclusion is available, the bankruptcy court's decision to apply it is reviewed for abuse of discretion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 104 (9th Cir. BAP 2007). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We review the bankruptcy court's decision to grant a motion for summary judgment de novo. Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 783 (9th Cir. 2007). Our de novo review is governed by the same standard used by the bankruptcy court under Civil Rule 56(c). See Suzuki Motor Corp. v. Consumers Union of U.S., Inc., 330 F.3d 1110, 1131 (9th Cir. 2003). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Civil Rule 56(c) (incorporated by Rule 7056); Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999).

Whether a person is a fiduciary for purposes of § 523(a)(4) is a question of federal law we review de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir. 1986); Lovell v. Stanifer

-18-

(In re Stanifer), 236 B.R. 709, 713 (9th Cir. BAP 1999). Although de novo review is appropriate, the issue of the existence of a fiduciary relationship is a mixed question of fact and law. A mixed question of fact and law arises because the determination of whether a fiduciary relationship exists requires that we look to whether an express or technical trust was created under state law, which requires an evaluation of the facts. See Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996).

## V. DISCUSSION

Tomasi attempts to raise several issues on appeal, some of which are not properly before us. We consider only the issues of whether the bankruptcy court properly applied issue preclusion to the State Court Judgment and whether the Trust was entitled to summary judgment determining that the State Court Judgment was excepted from discharge for defalcation under § 523(a)(4).

**A. The bankruptcy court did not err in determining that issue preclusion was available or abuse its discretion in applying issue preclusion to the State Court Judgment.**

Preclusion principles apply in discharge exception proceedings under § 523(a) to preclude relitigation of state court findings relevant to the dischargeability determination. Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). Further, 28 U.S.C. § 1738 requires us, as a matter of full faith and credit, to apply the relevant state's preclusion principles. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Here, we apply the issue preclusion principles of California, the state from which the State Court Judgment originated. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).

Under California law, issue preclusion bars relitigation of

-19-

an issue if: (1) the issue sought to be precluded is identical to that decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the judgment in the prior proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same, or in privity with, the party to the prior proceeding. Harmon v. Kobrin, (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001)(citing Lucido v. Sup. Ct., 51 Cal.3d 335, 341 (Cal. 1990)).

Without question, the parties involved in the adversary proceeding are the same as those involved in the prior proceedings before the state and appellate courts. Further, it is undisputed that the State Court Judgment became final after being denied review by the California Supreme Court. Contrary to Tomasi's contention, which we discuss more thoroughly below, the rulings by the state court and the California Court of Appeal demonstrate that this case was decided on the merits. Therefore, the fourth and fifth criteria for application of issue preclusion are satisfied. Accordingly, we review only the first three.

**1. The issue sought to be precluded from relitigation is identical to that decided in the prior proceeding.**

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." Lucido, 51 Cal.3d at 342. The issues at stake in the state court proceedings and in the adversary proceeding were the same: whether Tomasi was a fiduciary, and, if so, whether he breached his fiduciary duty to the Trust causing it damages.

-20-

Tomasi does not appear to dispute this. His argument focuses more on whether these issues were actually litigated and necessarily decided in the prior proceedings. Therefore, we conclude, as did the bankruptcy court, the first criterion for application of issue preclusion is satisfied.

**2. The elements required to establish fraud or defalcation in a fiduciary capacity were actually litigated in the prior proceeding.**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ." A creditor seeking relief under § 523(a)(4) must establish three elements: (1) an express trust existed; (2) the debt was caused by fraud or defalcation; and (3) the debtor was a fiduciary to the creditor at the time the debt was created. Nahman v. Jacks, 266 B.R. 728, 735 (9th Cir. BAP 2001)(citing Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997)). The term "fiduciary" is construed narrowly for purposes of § 523(a)(4). It does not include all relationships of trust and confidence; rather, the fiduciary relationship must arise from an express or technical trust, which is determined by state law. In re Cantrell, 329 F.3d at 1125.

"[A]n issue is 'actually litigated' when it is properly raised by a party's pleadings or otherwise, when it is submitted to the court for determination, and when the court actually determines the issue." In re Harmon, 250 F.3d at 1247 (citing People v. Sims, 32 Cal.3d 468 (Cal. 1982)). However, even if the state court did not make any express findings, it has been held in our circuit that "[a]s a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually

-21-

litigated."  Id. at 1248.

In California "[t]he five elements required to create an express trust are (1) a competent trustor, (2) trust intent, (3) trust property, (4) trust purpose, and (5) a beneficiary." Keitel v. Heubel, 103 Cal.App.4th 324, 337 (2002)(citation omitted).

Tomasi contends that the bankruptcy court erred in determining that the issue of whether an express trust existed was precluded because the state and appellate courts had not made this finding.  Specifically, argues Tomasi, the Trust had failed to plead the terms of the Trust as required in the prior action, the written terms of the Trust were not in evidence in the prior action, and the state court and court of appeal had not read or considered the Trust.  Notably, Tomasi failed to include in the record a majority of the underlying documents that would perhaps support his argument.  Nonetheless, we reject it.

First, Tomasi admitted in his discovery responses that he was the trustee of the Trust.  It is also undisputed that Denoce was a competent trustor, that the Simi Valley Property was part of the Trust res, that the Trust's purpose was to benefit Denoce's daughter, and that she was the beneficiary.  Moreover, the written terms of the Trust were subject to consideration as the document had been filed under seal in the state court and court of appeal. In its ruling, the state court acknowledged the existence of the Trust filed under seal.  These facts alone establish the existence of an express trust.  Further, the state court could not have found that Tomasi breached his fiduciary duties to the Trust

-22-

without implicitly or necessarily deciding that an express trust existed to which he owed such duties.  Hence, the existence of an express trust was actually litigated.[18]  In re Harmon, 250 F.3d at 1248.

> **b.  The debt was caused by fraud or defalcation, and the debtor was a fiduciary to the creditor at the time the debt was created.**

Until recently, innocent acts of failing to fully account for money received in trust would be held as nondischargeable defalcations; no intent was required.  Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1190 (9th Cir. 2001)(citations omitted); see also Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009).  In other words, a creditor had to establish only that trust assets had gone missing and that the debtor had failed to account for them or was responsible for their loss.  See In re Hemmeter, 242 F.3d at 1191.

However, while this appeal was pending, the United States Supreme Court issued Bullock v. BankChampaign, N.A., 133 S.Ct. 1754 (2013), on May 13, 2013, which established a heightened mental state for defalcation under § 523(a)(4) and has changed

---

[18] Tomasi contends that because of various tax liens pending against Denoce the Trust is invalid.  This issue has already been raised before the state trial court and court of appeal and was, apparently, rejected.  Therefore, it is not properly before us.  Even if we could review this issue, Tomasi raised it only in his statement of issues presented on appeal; he has not provided any argument in support in his opening brief.  As a result, this issue has been abandoned and is not subject to review.  City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010) (appellate court "will not review issues which are not argued specifically and distinctly in a party's opening brief.").

-23-

Ninth Circuit law.[19] In <u>Bullock</u>, the Supreme Court determined that where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term "defalcation" requires an "intentional wrong." <u>Id.</u> at 1759. This includes a knowingly wrongful act, or a grossly reckless act, by the debtor in a fiduciary capacity. <u>Id.</u> Where actual knowledge of wrongdoing is lacking, a fiduciary who "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty" satisfies the statute. <u>Id.</u> (citation omitted).

Based upon Tomasi's discovery responses, the state court found that Tomasi became the trustee of the Trust in 2004. It was after this point that Tomasi engaged in activities the state court found were detrimental to the Trust. Accordingly, as § 523(a)(4) requires, Tomasi's fiduciary relationship to the Trust arose from "an express or technical trust" without reference to "the wrongdoing that caused the debt." <u>Honkanen v. Hopper (In re Honkanen)</u>, 446 B.R. 373, 379 (9th Cir. BAP 2011).

As for whether the debt was caused by defalcation, the Trust had alleged that Tomasi breached his fiduciary duties by (1) transferring the Simi Valley Property to himself in fee simple and continuing to hold title to it, (2) by wrongfully encumbering trust property for his own profit, and (3) by failing to account for the loan proceeds from the encumbrance he wrongfully placed on the Simi Valley Property. The state court ruled, and the court of

---

[19] At oral argument, we invited the parties to provide supplemental briefing on <u>Bullock</u> addressing its potential effect, if any, on this case. Both parties filed the optional briefs.

-24-

appeal affirmed, that Tomasi's conduct had violated CAL. PROBATE CODE §§ 16002, 16004, 16040, 21350 and 859.  Most importantly, the state court found that Tomasi's self-dealing conduct had constituted "bad faith" for purposes of the Trust's claims for slander of title and the appropriate Probate Code violations requiring such a finding.  The state court specifically found that Tomasi had violated CAL. PROBATE CODE § 859, which inherently requires a bad faith finding.  Thus, under Bullock, Tomasi's "bad faith" conduct satisfies § 523(a)(4) and the inquiry could stop here.  Nonetheless, the state court further found that Tomasi knew of his fiduciary duties to the Trust, yet he "intentionally" and "wrongfully" transferred the Simi Valley Property to himself for his own benefit in violation of those duties, and he refused to return the property or account for any missing funds, thereby damaging the Trust.  Accordingly, Tomasi's conduct, as found by the state court, clearly satisfies even the new standard for defalcation under Bullock.  Remand to the bankruptcy court will not be required.

The bankruptcy court also determined that Tomasi's failure to object to the Re-filed MSJ in state court did not preclude the application of issue preclusion to the State Court Judgment. Tomasi contends that the bankruptcy court erred because the state court's grant of summary adjudication to the Trust on its claims for breach of fiduciary were the result of a default.[20]  The court

[20] To the extent Tomasi argues that the state court denied him due process by refusing to allow him to present evidence in opposition to the Re-filed MSJ, the California Court of Appeal has already considered and rejected this argument.  That ruling is now
(continued...)

-25-

of appeal has already considered and rejected Tomasi's "default" argument. Further, the State Court Judgment was far from a default judgment. Tomasi filed two oppositions to the Trust's motions, a motion for reconsideration, a motion for a new trial, a writ of mandate, a writ of supersedeas and an appeal of the State Court Judgment. When it was affirmed by the California Court of Appeal, he filed a petition for rehearing, and when that was denied, he filed a petition for review with the California Supreme Court. Tomasi has had many bites at this apple.

We agree with the bankruptcy court that the issue of Tomasi's defalcation was actually litigated in the prior proceeding. Accordingly, the second criterion for application of issue preclusion is satisfied.[21]

**3. The elements required to establish fraud or defalcation in a fiduciary capacity were necessarily decided in the prior proceeding.**

Here, Tomasi asserts his same "default" argument, which he claims precluded the application of issue preclusion to the State Court Judgment. The bankruptcy court determined that the facts required to prove Tomasi had engaged in defalcation by a fiduciary had been necessarily decided in the state court proceedings.

The state court considered the facts of this case and decided

---

[20](...continued) final. Any due process arguments with respect to the state court proceedings are not properly before us.

[21] Tomasi also argues that because his "alleged fraud" was determined upon default, no finding of actual fraud by the state court exists to which issue preclusion could apply under § 523(a)(4). Fraud was never at issue in this case. In any event, a defalcation by a fiduciary, which was expressly found in the prior proceedings, suffices to except a debt from discharge under § 523(a)(4). In re Hemmeter, 242 F.3d at 1190.

-26-

the issues relating to Tomasi's breach of fiduciary duty by entering the State Court Judgment in the Trust's favor. Specifically, it found that Tomasi had breached his fiduciary duty by wrongfully taking trust property, engaging in self-dealing with trust property for his own profit, and failing to provide a full accounting. His conduct violated multiple sections of the CAL. PROBATE CODE. The Trust was awarded damages based on these violations. These findings of breach of fiduciary duty under various sections of the CAL. PROBATE CODE, which clearly amount to a defalcation for purposes of § 523(a)(4), were "necessary" to support the State Court Judgment. Moreover, as discussed above, the issue of whether an express trust existed was also necessarily decided in that the state court could not have found Tomasi liable for breach of his fiduciary duties without necessarily deciding that an express trust existed to which he owed a fiduciary duty.

Accordingly, the third criterion for application of issue preclusion is satisfied.

**4. Public policy does not preclude the application of issue preclusion to the State Court Judgment.**

If all of the threshold requirements are met, as they are here, the court then must decide whether application of issue preclusion would "further the policy interests underlying the doctrine." In re Harmon, 250 F.3d at 1249, n.11 (citing Lucido, 51 Cal.3d at 342-43). The California Supreme Court has identified three such policy interests: "'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'" Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912, 919-20 (9th Cir.

-27-

2001)(quoting Lucido, 51 Cal.3d at 343).

Tomasi argues only that no evidence was submitted in the prior state court proceedings to support the creation or existence of a valid express trust. Not only is this factually incorrect, we already have concluded to the contrary.

The bankruptcy court explained in great detail why none of these policy interests were present in this case. In short, it concluded that application of issue preclusion to the State Court Judgment promoted judicial economy and conserved judicial resources, because it would not have to hold a trial to determine issues that had already been decided by the state court and confirmed on appeal. In addition, applying issue preclusion protected the Trust from vexatious litigation because Tomasi was represented by counsel and had a full and fair opportunity to litigate these issues in the state court proceedings; the Trust should not be required to relitigate before the bankruptcy court what was properly decided in the state court and confirmed on appeal.

Despite Tomasi's lack of argument here, we agree with the bankruptcy court that none of these policy interests preclude the application of issue preclusion to the State Court Judgment.

## VI. CONCLUSION

The state court's findings established that an express trust existed, that Tomasi's defalcation caused a debt to the Trust, and that he was acting in a fiduciary capacity at the time the debt was created. Accordingly, because no genuine issue of material fact existed, the bankruptcy court did not err when it granted summary judgment to the Trust on its § 523(a)(4) claim for relief.

-28-

We AFFIRM.