**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   AZ-13-1461-KiTaPa |
| ) | |
| ROSIRA A. CORREIA-SASSER, ) | Bk. No.   2:10-17877-RJH |
| ) | |
| Debtor. ) | Adv. No.  2:10-1632-RJH |
| ) | |
| ) | |
| ROSIRA a. CORREIA-SASSER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| JOHN ROGONE and JASON ROGONE, ) | |
| individuals and successor ) | |
| co-trustees of the ALFREDO ) | |
| CORREIA AND MARY F. CORREIA ) | |
| TRUST, ) | |
| ) | |
| Appellees. ) | |

Submitted Without Oral Argument
on July 25, 2014[2]

Filed - August 19, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Randolph J. Haines, Bankruptcy Judge, Presiding

Appearances:     Appellant Rosira Correia-Sasser pro se on brief;
G. Lee Henman, Jr., of Henman Law Firm, P.C. on
brief for appellees, John Rogone and Jason Rogone.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

[2] In an order entered on April 4, 2014, the Panel determined
this matter was suitable for disposition without oral argument.
Fed. R. Bankr. P. 8012; 9th Cir. BAP R. 8012-1.

Before: KIRSCHER, TAYLOR and PAPPAS, Bankruptcy Judges.

Appellant, chapter 7[3] debtor Rosira Correia-Sasser ("Debtor"), appeals a judgment determining that a debt arising from a California judgment was excepted from discharge under § 523(a)(4) and that a debt arising from an Arizona judgment was excepted from discharge under § 523(a)(4) and (a)(6). We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Events leading up to the California litigation**

Alfredo Correia, Debtor's father, died in 1989 and left certain assets in a trust dated October 26, 1989 (the "Trust"). Debtor's sons, Jason Rogone, John Rogone (now Bing Bada Bing) and James Shaw, are the Trust beneficiaries. At all relevant times, Debtor was the trustee of the Trust. By its terms, the Trust was to end in 2005, when James Shaw reached twenty-five years of age.

The Trust provided that upon Mr. Correia's death, Debtor would receive title to two parcels of real property located in the Point Loma area of San Diego (together, the "Lots"). Lot 12, which contained a home, was left to Debtor "free of trust." Lot 11, which was adjacent to Lot 12, was vacant. Lot 11 was left to Debtor "as trustee for the benefit of John Rogone, Jason Rogone and James Shaw."

In 1991, Debtor, individually and as trustee of the Trust, contributed the Lots to a limited partnership known as Point Loma Properties LLP (the "Developer") for a value of $620,000 for the

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

purpose of building a condominium project.[4] Debtor, individually and as trustee of the Trust, became a limited partner in the limited partnership owning the condominium project. She and the Trust were each given an equal interest in the partnership valued at $310,000, for a total of $620,000. She and the Trust received a cash liquidating distribution on the formation of the limited partnership in the amount of $420,000, less a six percent broker commission on the value of the property contributed to the partnership, i.e., six percent of $620,000. The net cash liquidating distribution on formation, thus, amounted to $383,513.95 [$420,000 less six percent of $620,000]. The $200,000 remaining from initial capital contribution was to be paid either as a liquidating distribution or as liquidation proceeds as specified in the limited partnership agreement. As security for her investment, Debtor obtained deeds of trust on the homes of other partners of the Developers; the California state court found such deeds of trust "illusory."

Debtor did not distribute any portion of the cash liquidating distribution on formation to the Trust, but kept all $383,513.95 for herself, effectively shifting the entire risk of the investment to the Trust and its beneficiaries. Although under the limited partnership agreement the Lots were each assigned a value of $310,000 (or a 50/50 split), Debtor testified that she allocated the cash liquidating distribution on formation to

_____

[4] Initially, Debtor's transaction with the Developers involved a sale of the two lots, but the transaction evolved into a partnership wherein one group of partners contributed cash and Debtor, on behalf of herself and the Trust, contributed the two lots.

-3-

herself because she had been advised by her father and her real estate agent that Lot 11 (the Trust's lot) was worth only one quarter of the value of Lot 12 (her lot).  Debtor further testified that at the time she entered into the transaction with the limited partnership, she thought it was "very fair" that she receive two-thirds of the $620,000 (the nearly $400,000 in cash) and the Trust beneficiaries receive one-third (the $200,000 investment risk).

When the Developer failed to develop the Lots and distribute the $200,000 plus interest, Debtor sued the Developer.  In her individual capacity, she settled that suit for $60,000.  Debtor kept all of the settlement proceeds until John and Jason brought suit against her, after which she distributed $10,000 to each of her sons, but kept $30,000 for herself.  Ultimately, Debtor was ordered by the California state court to pay the remaining $30,000 in settlement proceeds to the Trust.

**B.    The California litigation and judgment**

In 2004, John and Jason filed suit against Debtor in California state court for breach of fiduciary duty and other claims.  In 2006, the California state court found that while acting in her capacity as trustee, Debtor committed multiple breaches of her fiduciary duty by:  (1) investing her children's money in a highly speculative and risky investment; (2) taking the entire cash distribution and placing the investment risk solely on the Trust; (3) failing to provide annual accountings; (4) failing to give the Trust beneficiaries access to Trust records; and (5) failing to distribute the remaining Trust property upon its termination in 2005.  Debtor was removed as trustee.

-4-

While the California state court found that Debtor's "inexperience, misunderstanding and misguided realtor reliance [were] not defenses to her breach of fiduciary duty," it also determined that allocating the entire risk of the investment to the Trust while taking the cash for herself was "a pure conflict" and that the transaction she entered into "was not a prudent investment." It also found in support of mitigating damages under CAL. PROBATE CODE § 16440(b)[5] that Debtor had acted "reasonably, and in good faith under the circumstances known to [her]" and that her actions "were not intentional or an attempt to take her children's inheritance." The California state court finally found that Debtor was clearly taken advantage of by other partners of the Developers, their attorneys and her realtor. Punitive damages were denied.

An amended judgment for $383,244.64[6] plus $4,647.60 for costs was entered in March 2007 ("California Judgment"). Debtor did not appeal. John and Jason registered the California Judgment in Arizona in August 2007 and recorded the California Judgment in the Maricopa County Recorder's Office in Arizona in October 2007.

**C.      The Arizona litigation**

While the California litigation was pending, Debtor and her

---

[5] CAL. PROBATE CODE § 16440(b) provides:

If the trustee has acted reasonably and in good faith under the circumstances as known to the trustee, the court, in its discretion, may excuse the trustee in whole or in part from liability under subdivision (a) if it would be equitable to do so.

[6] The original $414,003 judgment was reduced due to the partial satisfaction of $30,758.36 from the Developer suit settlement proceeds.

-5-

current husband were busy working with legal counsel to transfer Debtor's assets to protect her from any potential adverse judgment. In October 2007, John and Jason sued Debtor, her husband and others in Arizona state court alleging that various asset transfers violated Arizona's Uniform Fraudulent Transfer Act. The complaint asserted that during the pendency of the California litigation, Debtor recognized she was not likely to prevail and, before the conclusion of that case, she and her husband transferred virtually all of Debtor's assets in an attempt to hide them from her sons. Specifically, John and Jason claimed that Debtor made the transfers with the intent to hinder, delay or defraud them in the collection of the California Judgment.

An advisory jury found for John and Jason in July 2009. Prior to the entry of any judgment, the Arizona state court issued a Minute Entry Ruling on October 8, 2009 (the "2009 Minute Entry") in relation to John and Jason's post-trial motion for attorney's fees. The Arizona state court found that Debtor was liable for John and Jason's fees under ARS §§ 12-349 and 12-350.[7] A judgment was eventually entered in November 2009 and amended in December 2009, nunc pro tunc. The Arizona state court determined that Debtor and her husband transferred assets with the intent to hinder, delay or defraud Debtor's sons in the collection of the

---

[7] ARS § 12-349 permits the court to assess attorney's fees against a party who brings or defends a claim without substantial justification – in other words – frivolous claims or defenses. A claim is "without substantial justification" if it constitutes harassment, is groundless and is not made in good faith. ARS § 12-350 provides that the court must set forth specific reasons for an award under ARS § 12-349 and lists the factors the court may consider to make that determination.

-6-

California Judgment.[8] It further found that Debtor and her husband were aware of the substantial likelihood that Debtor would not be successful in the California litigation and had the intent to hide her assets from her sons by transferring them. Debtor and her husband were found to have defended the case in bad faith. Accordingly, Debtor's sons were awarded $121,950 in attorney's fees and $3,137.21 in costs. The Arizona state court also ordered that certain properties be sold and the net proceeds applied to satisfy the California Judgment.

As explained below, post-judgment motions were considered, matters were appealed, and the Arizona judgment was ultimately amended two more times.

**D.    The nondischargeability action**

Debtor filed a chapter 7 bankruptcy case on June 8, 2010. John and Jason filed a complaint seeking to except the California Judgment from discharge under § 523(a)(4) and to except the first amended Arizona judgment from discharge under § 523(a)(6).

**1.    The Arizona litigation continues**

In the meantime, the Arizona litigation continued. After considering various motions to alter or amend judgment or for a new trial, the Arizona state court entered another amended judgment on November 19, 2010, nunc pro tunc to the original November 2009 judgment (the "Second Amended Arizona Judgment"). Among other things, Debtor had sought relief from the attorney's

---

[8] The Arizona state court found that Debtor's counsel were never informed by Debtor of, or had any knowledge of, her intent to hinder, delay or defraud her sons in the collection on their judgment or that counsel defended the case with the primary or sole purpose to hinder, delay or defraud the sons.

-7-

fee award, contending that the Arizona state court failed to make the requisite findings to support it. The Arizona state court disagreed, referring to the 2009 Minute Entry wherein it made the required findings. Debtor's motion for a new trial on the attorney's fees was denied.

Notably, after Debtor sought relief from the attorney's fee award, the Arizona state court entered a "Ruling" on February 24, 2010, which appears to be the Memorandum in support of the Second Amended Arizona Judgment and a supplement to the 2009 Minute Entry (the "2010 Minute Entry"). The 2010 Minute Entry was drafted by the court, as opposed to the Second Amended Arizona Judgment, which was drafted by John and Jason's counsel. These facts become important later. The 2010 Minute Entry set forth the same findings made in the Second Amended Arizona Judgment as to the attorney's fee award under ARS § 12-349 and the court's denial to reconsider that issue. It also noted that Debtor had admitted at trial "that she transferred Arizona property during the pendency of the California litigation to insulate herself and her assets from suit," which the Arizona state court found to be an admission under the UFTA.

In January 2011, Debtor cross-appealed from portions of the Second Amended Arizona Judgment, including the determination that she had defended the case in bad faith, that resulted in the monetary sanction of attorney's fees.

**2. Motion for summary judgment and ruling**

In March 2011, John and Jason moved for summary judgment on their nondischargeability complaint ("MSJ"). In short, they argued that issue preclusion applied to both the California

-8-

Judgment and the Second Amended Arizona Judgment.

The bankruptcy court granted the MSJ. Applying the Ninth Circuit's pre-Bullock[9] standard, the court reasoned that Debtor's breach of fiduciary duty, even if innocent, satisfied the requirement for a defalcation under § 523(a)(4) and therefore the California Judgment was nondischargeable. As for the Second Amended Arizona Judgment, the bankruptcy court determined that Debtor's actions established a willful and malicious injury under § 523(a)(6). The Arizona state court found she acted wrongfully when she voluntarily and intentionally transferred her property and property interests, the transfers were made with the actual intent to hinder, delay or defraud her sons, and her actions injured her sons in their attempt to collect on the California Judgment. Therefore, the Second Amended Arizona Judgment was a debt incurred due to Debtor's willful and malicious injury and was nondischargeable under § 523(a)(6).

**3. Debtor's motion to stay entry of judgment**

In November 2011, Debtor moved to stay entry of the nondischargeability judgment pending a ruling by the Arizona state court. Apparently, the language in the Second Amended Arizona

---

[9] Bullock v. BankChampaign, N.A., 133 S.Ct. 1754 (2013). Prior to Bullock, the rule in the Ninth Circuit was that no particular state of mind was required to satisfy § 523(a)(4)'s defalcation requirement. See Sherman v. Sec. & Exch. Comm'n. (In re Sherman), 658 F.3d 1009, 1017-18 (9th Cir. 2011). Even an innocent failure to account for trust property could constitute a defalcation. See id. (citing Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1190-91 (9th Cir. 2001)). Bullock, however, overruled In re Sherman and In re Hemmeter to the extent those two decisions did not recognize that for purposes of § 523(a)(4), a "defalcation" includes a scienter or "state of mind" component. See Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274, 278 (9th Cir. BAP 2013)(recognizing Bullock and the abrogation of the Ninth Circuit's previous intent standard).

-9-

Judgment, which the bankruptcy court had relied upon for its ruling, was being reviewed by the Arizona state court for possible "fraud upon the court" committed by John and Jason's counsel who drafted it. The Arizona Court of Appeals had suspended the appeal of the Second Amended Arizona Judgment and revested jurisdiction in the trial court for the purpose of permitting Debtor to file a motion to set the judgment aside. Debtor filed that motion, which was pending.

No order was entered on the motion to stay entry of the nondischargeability judgment, but the bankruptcy court informally agreed to not enter it pending the outcome of the Arizona litigation.

**4.    The third amended Arizona judgment**

About eighteen months later, the Arizona state court issued a third amended judgment (the "Third Amended Arizona Judgment") on May 1, 2013, nunc pro tunc to the original November 2009 judgment. It replaced and superceded the Second Amended Arizona Judgment because that judgment "contained multiple, material and surreptitiously added provisions not authorized by any prior court ruling[.]" The Third Amended Arizona Judgment, however, and contrary to statements made by Debtor's counsel at the later trial before the bankruptcy court, expressly incorporated the findings set forth in the 2010 Minute Entry, which incorporated similar findings made in the 2009 Minute Entry. The Arizona state court maintained its ruling that Debtor had defended the fraudulent transfer claims in bad faith and, therefore, she was still liable for the attorney's fee award for the reasons stated in the 2010 Minute Entry.

### 5.    The motion to amend the MSJ ruling

In light of the Third Amended Arizona Judgment and the issuance of <u>Bullock</u>, Debtor moved to amend the bankruptcy court's ruling on the MSJ under Civil Rule 59(a).  Debtor contended that the findings in the Third Amended Arizona Judgment failed to support a § 523(a)(6) claim for two reasons.  First, the judgment contained no findings that the fraudulent transfers were done with the actual intent to hinder, delay or defraud Debtor's sons, only that they were "fraudulent and of no force and effect."  Second, the only monetary relief granted to Debtor's sons was the attorney's fees.  She noted that the judgment stated only that Debtor had defended the matter in "bad faith," and that finding, standing alone, was insufficient to establish a willful and malicious injury under § 523(a)(6).

Debtor also argued that the California Judgment did not support a defalcation under § 523(a)(4).  She asserted that the California state court's findings that Debtor's breach was not intentional or an attempt to take her children's inheritance, and that she had acted reasonably and in good faith under the circumstances, were insufficient to meet the heightened intent standard under <u>Bullock</u>.  John and Jason opposed Debtor's motion.

The bankruptcy court granted Debtor's motion to amend and ordered a limited trial on the application of <u>Bullock</u> to her intent.  Although not expressly stated in its minute entry, Debtor would also be allowed to present evidence as to her intent when she made the property transfers during the California litigation.  However, the bankruptcy court's decision to allow that evidence was "without prejudice" and subject to the court later concluding

-11-

after trial that issue preclusion did in fact apply to the Arizona state court's findings on the matter.

### 6. The trial and bankruptcy court's ruling

The bankruptcy court held a trial on the issues of Debtor's intent as a fiduciary under Bullock and her intent with respect to the fraudulent transfers made during the California litigation. Debtor and Jason testified. After summation by the parties, the bankruptcy court announced its findings and conclusions on the record, ruling that the California Judgment was excepted from discharge under § 523(a)(4) and that the Third Amended Arizona Judgment for John and Jason's attorney's fees was excepted from discharge under § 523(a)(4) and (a)(6). A judgment consistent with the court's oral ruling was entered on September 11, 2013. This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining the California Judgment was excepted from discharge under § 523(a)(4)?

2. Did the bankruptcy court err in determining the Third Amended Arizona Judgment was excepted from discharge under § 523(a)(4) and (a)(6)?

## IV. STANDARDS OF REVIEW

In reviewing a bankruptcy court's nondischargeability determination, we review its findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). However,

-12-

the ultimate question of whether a particular debt is dischargeable is a mixed question of fact and law that we review de novo. See Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011). The availability of issue preclusion is a question of law we review de novo. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012). If issue preclusion is available, the decision to apply it is reviewed for abuse of discretion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. The bankruptcy court did not err when it determined that the California Judgment was excepted from discharge under § 523(a)(4).**

A debt is excepted from discharge under § 523(a)(4) where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." Mele v. Mele (In re Mele), 501 B.R. 357, 363 (9th Cir. BAP 2013)(quoting Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997)). A party must prove these elements by a preponderance of the evidence. Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 713 (9th Cir. BAP 1999).

In California, "[t]he five elements required to create an express trust are (1) a competent trustor, (2) trust intent, (3) trust property, (4) trust purpose, and (5) a beneficiary."

-13-

Keitel v. Heubel, 103 Cal.App.4th 324, 337 (2002). Although a copy of the Trust was not offered in the record, no one disputes its existence. Debtor also admitted that she was the trustee of the Trust, which no one disputes is a "fiduciary" within the meaning of § 523(a)(4), at the time the California debt was created. Therefore, the only issue the bankruptcy court had to resolve is whether the California Judgment was caused by a defalcation.

A defalcation has two elements: a breach of fiduciary duty and wrongful intent. A breach of fiduciary duty is satisfied either by misappropriating trust assets or by failing to account for such assets. In re Hemmeter, 242 F.3d at 1190 (citing Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996)). A "defalcation" can occur for purposes of § 523(a)(4) if the fiduciary either misappropriated trust assets or failed to account for them. See id.

"Wrongful intent" requires a culpable state of mind "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Bullock, 133 S.Ct. at 1757. Reckless conduct qualifies as the equivalent of "actual knowledge of wrongdoing." Id. at 1759. A fiduciary's conduct is sufficiently reckless "if the fiduciary consciously disregards or is willfully blind to a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." Id. (quotation marks omitted).

The bankruptcy court found that Debtor's conduct in failing to allocate, without justification, any of the $383,513.95 in sale proceeds and placing the entire risk of the limited partnership

-14-

investment on the Trust was, at minimum, a willful blindness to a substantial and unjustifiable risk that would violate her fiduciary duties to the Trust:

> To me the most significant fact in this case is not so much how the sales price was allocated between the two lots, but rather how the down payment was allocated between the two lots. And there is no testimony that Ms. Correia relied on the advice of anyone else that she was acting properly or authorized to allocate all of the cash down payment to her own benefit while allocating an investment in, frankly, either a deferred debt secured by a deed of trust or, as it turned out, a limited partnership interest to the trust, to Lot 11. Nor did I even hear from Ms. Correia any explanation or justification for that allocation, that is allocating all of the down payment to herself instead of, as she contended, well, it should have been allocated – that is the sale price should have been allocated three quarters perhaps to Lot 12 and one quarter to Lot 11. She didn't even provide any justification for similarly allocating the down payment. That is where I find that, by taking all of the cash for herself and leaving the trust with a limited partnership interest, she acted at a minimum with willful blindness to her fiduciary duties to the Trust. Willfully blind to the substantial risk of the limited partnership investment.
>
> Again, it doesn't really matter how much she thought that risk was, there's absolutely no justification for putting all of that risk, however much it might be, on the trust while taking none for herself and instead taking all of the cash. That's where I find that she acted recklessly within the meaning of the standard adopted by <u>Bullock</u>.

Trial Tr. (Sept. 9, 2013) 120:6-121:7.

Debtor contends the bankruptcy court erred by failing to give preclusive effect to the California state court's findings that she acted reasonably and in good faith, and that her actions were not intentional or an attempt to harm her children.

The doctrine of issue preclusion applies in bankruptcy dischargeability proceedings to preclude the relitigation of state court findings relevant to dischargeability. <u>Grogan v. Garner</u>, 498 U.S. 279, 285 n.11 (1991); <u>T & D Moravits & Co. v. Munton</u>

-15-

(In re Munton), 352 B.R. 707 (9th Cir. BAP 2006). The party asserting issue preclusion has the burden to prove each required element. Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050-51 (9th Cir. 2008). Any reasonable doubt regarding what the prior court decided is resolved against applying issue preclusion. In re Honkanen, 446 B.R. at 382.

For issue preclusion to apply to the California Judgment, the California state court must have made findings that Debtor engaged in a "defalcation" within the meaning of § 523(a)(4).[10] These findings must have been actually litigated and necessary to the California Judgment. The other requirements of issue preclusion are satisfied because the issues in each proceeding are the same (breach of fiduciary duty and damages), the parties are the same, and the California Judgment is final.

To establish a breach of fiduciary duty in California, plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. Oasis W. Realty, LLC v. Goldman, 51 Cal.4th 811, 820 (2011). No particular scienter element is required. The California state court's language of "lack of prudence" and "acted reasonably" implies a negligence standard was applied in Debtor's case and not the subjective knowingly or reckless standard required by Bullock.

---

[10] In California, the party asserting issue preclusion must establish the following five elements: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. Lucido v. Super. Ct., 51 Cal.3d 335, 341 (1990)(en banc).

-16-

Thus, whether a "defalcation" occurred for purposes of § 523(a)(4) involves a different legal standard than the breach of fiduciary duty found by the California state court. Therefore, whether Debtor's conduct rose to the level of a "defalcation" under Bullock was never actually litigated or necessarily decided in the prior action.

Nevertheless, in mitigating the beneficiaries' damages under CAL. PROBATE CODE § 16440(b), the California state court found that Debtor had "acted reasonably and in good faith under the circumstances known to [her]." Thus, intent findings were made for the purpose of assessing damages. Debtor contends the bankruptcy court was required to give preclusive effect to these "favorable" intent findings and could not make its own findings on that issue. We disagree. On this record, it is not clear whether these findings pertain to just Debtor's decision on the failed investment, which the California state court focused heavily on and tied to unscrupulous third parties, to Debtor's failure to provide accountings or access to Trust records, or to all of her breaches of fiduciary duty, including her act of "pure conflict" in keeping the sale proceeds for herself while allocating 100% of the investment risk to the Trust. Thus, it is not clear which breach or breaches were necessary to the California Judgment, and it cannot support a finding that Debtor did not commit a defalcation.

We further conclude the California state court's findings that Debtor's actions "were not intentional or an attempt to take her children's inheritance" were entirely unnecessary to the California Judgment. Under California law, an issue has been

-17-

"necessarily decided" if it is not "entirely unnecessary" to the judgment in the initial proceeding. Zevnik v. Super. Ct., 159 Cal.App.4th 76, 83 (2008)(citing Lucido, 51 Cal.3d at 342). See also Yates v. United States, 354 U.S. 298, 336 (1957)(issue preclusion "makes conclusive in subsequent proceeding only determinations of fact . . . that were essential to the decision"). Ultimately, these findings were unnecessary to the court's determination on damages, because its findings of Debtor's "reasonable" and "good faith" conduct were sufficient to support its decision to mitigate damages under CAL. PROBATE CODE § 16440(b). As a result, the bankruptcy court did not have to give these additional and unnecessary findings preclusive effect.

Because the California Judgment had no preclusive effect as to Debtor's intent for purposes of § 523(a)(4), the bankruptcy court was free to make its own findings to determine whether it was excepted from discharge. The bankruptcy court found the most significant breach of Debtor's fiduciary duty was how she allocated the cash liquidating distribution on formation between her and the Trust. No one advised Debtor that allocating the entire cash distribution to herself, while allocating only the limited partnership interest and the $200,000 remaining capital account to the Trust, was proper. Further, Debtor provided no explanation or justification for that allocation, or for her failure to allocate the cash distribution in accordance with the values she placed on the Lots. By taking all of the cash for herself and leaving the Trust with only a limited partnership interest and a $200,000 remaining capital account, Debtor, at minimum, was willfully blind to a substantial and unjustifiable

-18-

risk that her conduct would violate her fiduciary duties. This conduct is what led the bankruptcy court to conclude that Debtor had acted recklessly within the meaning of Bullock.

We see no clear error in the bankruptcy court's findings. Accordingly, it did not err in determining the California Judgment was excepted from discharge under § 523(a)(4).

**B.    The bankruptcy court did not err when it determined that the Third Amended Arizona Judgment was excepted from discharge under § 523(a)(6) and (a)(4).**

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Both willfulness and maliciousness must be proven to apply § 523(a)(6). Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). "A 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008)(quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original)). At a minimum, willful requires "a deliberate act with knowledge that the act is substantially certain to cause injury." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). In other words, a debtor's act is "willful" only if he or she actually intended to cause injury or actually believed that injury was substantially certain to occur. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-45 (9th Cir. 2002).

Proving a "malicious" injury requires a showing that the debtor (1) committed a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) was done without just

-19-

cause or excuse. Id. at 1146-47.

After hearing no testimony from Debtor attempting to justify why she engaged in the fraudulent transfers of her assets during the California litigation, the bankruptcy court decided the Arizona state court's finding that Debtor defended the fraudulent transfer action in bad faith would be given preclusive effect:

> As to the Arizona litigation, there is a finding which is entitled to res judicata effect that she defended the fraudulent transfer action in bad faith. At a minimum, that means as a matter of law it's a given that she had no bona fide defense to the claim that the transfer of her assets was made with actual intent to hinder, delay, and [sic] defraud creditors. And before me today the only evidence is that the only creditors she had were her children.
>
> She had the opportunity in testimony here to provide any justification she may have had as to either why that transfer was made in good faith, made for some reason other than with actual intent to hinder, delay, or defraud creditors, namely her children, or to put on any defense – any justification as to why she had a bona fide defense to that argument, and she did not come forward with any. In fact, all we really heard about why the transfer occurred at all was that it was originally advised that it made sense to put her husband's rental properties in an LLC. No testimony as to why she was advised that her own property should go into an LLC.
>
> Consequently, the only conclusion that can be drawn from the judgment, coupled with the lack of any other justification for it in her testimony today, is that it was made with the intent to keep her assets from her creditors and that constitutes willful and malicious injury under § 523(a)(6).
>
> . . .
>
> Consequently, I find and conclude that on the testimony the attorney's fees incurred in the Arizona litigation are also non-dischargeable pursuant to § 523(a)(6).

Trial Tr. (Sept. 9, 2013) 121:8-122:6; 122:13-15.

Debtor argues the Arizona state court made no findings that her conduct was willful or malicious and the bankruptcy court was limited to the finding in the Third Amended Arizona Judgment that

-20-

she litigated the case in "bad faith." Debtor argues that a bad faith finding is insufficient to satisfy a claim for a willful and malicious injury under § 523(a)(6). She further argues the bankruptcy court erred in determining the debt for the attorney's fees was excepted from discharge under § 523(a)(6) because the transfers did not result in any monetary damage to her sons. We disagree with all of Debtor's arguments.

The elements of a state court action are rarely identical to those for proving a willful and malicious injury. However, issue preclusion will apply if the facts established by the state court judgment establishes that a debtor's violation of the UFTA was a willful and malicious injury. We conclude the findings made by the Arizona state court established both the willful and malicious prongs for purposes of nondischargeability under § 523(a)(6).

A judgment for "actual" fraudulent transfer can satisfy the elements for a willful and malicious injury. In re Fairgrieves, 426 B.R. 748, 758 (Bankr. N.D. Ill. 2010)(judgment for "actual" fraudulent transfer can demonstrate a willful and malicious injury under § 523(a)(6)). See Vazquez v. AAA Blueprint & Digital Reprographics (In re Vazquez), 2013 WL 6571693, at *4-6 (9th Cir. BAP Dec. 13, 2013)(affirming bankruptcy court's ruling that creditor's judgment for actual fraudulent transfer under CAL. CIV. CODE § 3439.04(a)(1) satisfied the elements for a willful and malicious injury under § 523(a)(6), so issue preclusion was properly applied).

Although the Third Amended Arizona Judgment had eliminated the "intent" language previously stated in the Second Amended Arizona Judgment — i.e., that Debtor transferred her assets "with

-21-

the intent to hinder, delay or defraud Plaintiffs" — the Third Amended Arizona Judgment incorporated the findings made in the 2010 Minute Entry, which also incorporated and supplemented the findings made in the 2009 Minute Entry. The 2010 Minute Entry found that "Rose's own admission at trial that she transferred the Arizona property during the pendency of the California litigation to insulate herself and assets from suit was an admission under the UFTA." The 2009 Minute Entry states:

> [T]he Court finds by a preponderance of the evidence that Rosira Correia and John Sasser transferred assets with the intent to hinder, delay or defraud Plaintiffs.
>
> . . .
>
> Defendants Rosira Correia and John K. Sasser defended the case in bad faith. They transferred assets intending to hinder, delay or defraud Plaintiffs. They tried to hide her assets from Plaintiffs and then denied that was their intent.

Thus, the Third Amended Arizona Judgment established that Debtor engaged in an "actual" fraudulent transfer.

In addition, the Arizona state court's finding that Debtor defended the fraudulent transfer action in bad faith only further establishes a willful and malicious injury within the meaning of § 523(a)(6). As the bankruptcy court properly concluded, as a matter of law, because the Arizona state court found Debtor liable for John and Jason's attorney's fees under ARS § 12-349, clearly Debtor had no bona fide defense to the claim that the transfers of her assets were made with the actual intent to hinder, delay or defraud her sons and that the transfers were made with the intent to keep her assets from them. And, contrary to Debtor's contention, the bankruptcy court was not limited only to the Arizona state court's finding of "bad faith." In support of the

-22-

fee award under ARS § 12-349, the Arizona state court set forth its complete findings in the 2009 Minute Entry (incorporated in the 2010 Minute Entry, which was incorporated into the Third Amended Arizona Judgment), which states: "The Court finds that Defendants' defense constituted harassment, was groundless, was not made in good faith and was solely or primarily for delay."

With the Arizona state court's finding of actual intent, it follows that Debtor intended to cause injury to her sons or believed that injury was substantially certain to occur as a result of her transferring virtually all of her assets during the California litigation to prevent her sons from executing on what became the eventual California Judgment. Thus, a "willful" injury was established.

A "malicious" injury was also established. A wrongful act is self-evident given the nature of Debtor's conduct in transferring her assets for the purpose of hindering her sons' collection efforts. By finding her liable for actual fraudulent transfers, the Arizona state court also necessarily found that Debtor's acts were intentional. Her wrongful actions, as evidenced by the attorney's fee award under ARS § 12-349, necessarily caused her sons injury; they were forced to incur attorney's fees by having to file an action to undo the transfers in hopes of collecting on the California Judgment. See Suarez v. Barrett (In re Suarez), 400 B.R. 732, 739-740 (9th Cir. BAP 2009)("injury" can include litigation expenses; no underlying compensatory judgment is necessary for an award of attorney's fees to be nondischargeable). Finally, as also evidenced by the attorney's fee award, Debtor's actions were done without just cause or excuse. As the Arizona

-23-

state court found, her defense to the fraudulent transfer claims was without substantial justification. The bankruptcy court even offered Debtor the opportunity to provide any good faith reasons for the transfers; she offered none.

The doctrine of issue preclusion prohibits relitigation of issues adjudicated by the Arizona state court. In re Lopez, 367 B.R. at 104. Under Arizona law, issue preclusion applies "when an issue was actually litigated in a previous proceeding, there was a full and fair opportunity to litigate the issue, resolution of the issue was essential to the decision, a valid and final decision on the merits was entered, and there is common identity of parties." Hullett v. Cousin, 63 P.3d 1029, 1034-35 (Ariz. 2003)(en banc).

All of the foregoing elements are satisfied in this case. The factual issues relevant to Debtor's willful and malicious injury under § 523(a)(6) were actually litigated by the Arizona state court. Second, the record reflects that Debtor, who was represented by counsel, had a full and fair opportunity to, and did, litigate the fraudulent transfer claims and the attorney's fees under ARS § 12-349. Third, that Debtor tried to hide her assets and defended subsequent litigation in bad faith by denying her intent were essential to the Arizona state court's finding in the Third Amended Arizona Judgment that John and Jason were entitled to attorney's fees under ARS § 12-349. Fourth, a valid and final judgment on the merits was entered on May 1, 2013, nunc pro tunc, to the original judgment entered on November 24, 2009. Finally, the parties were the same. Accordingly, the bankruptcy court did not err in giving preclusive effect to the Arizona state

-24-

court's findings supporting its conclusion that the Third Amended Arizona Judgment for the statutory attorney's fees is a debt for a willful and malicious injury.

The bankruptcy court also determined the debt for the attorney's fees was nondischargeable under § 523(a)(4) as a direct consequence of John and Jason's attempt to satisfy the California Judgment:

> In addition, however, I believe their non-dischargeability stands on an independent ground. I believe those attorney's fees are also predictable consequences of the underlying actions and consequently are part of the debt determined to be non-dischargeable in the California actions. They are like the damages or I think in the case it was treble damages in Cohen versus Del La Cruz, the Supreme Court holding. They are by her own actions, intentional consequences of the underlying action that rendered the breach of her fiduciary duty non-dischargeable under § 523(a)(4). And consequently I believe the attorney's fees in the Arizona litigation are also non-dischargeable under § 523(a)(4).

Trial Tr. (Sept. 9, 2013) 122:16-123:2. In her statement of issues presented in her opening brief, Debtor questioned the bankruptcy court's decision that the attorney's fee award was nondischargeable under § 523(a)(4) because her sons did not seek such relief. However, nowhere in her brief did Debtor provide any more argument or authority on the matter. As a result, this issue has been abandoned. City of Emeryville v. Robinson, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010)(appellate court in this circuit "will not review issues which are not argued specifically and distinctly in a party's opening brief.").

In any event, we see no error in the bankruptcy court's decision. The attorney's fees awarded in the Third Amended Arizona Judgment are nondischargeable because they flowed from Debtor's nondischargeable conduct under § 523(a)(4). See Cohen v.

-25-

de la Cruz, 523 U.S. 213, 223 (1998)(nondischargeable debt can include attorney's fees and costs incurred as a result of debtor's nondischargeable fraudulent conduct; applying § 523(a)(2) but reading it in pari materia with other nondischargeability sections, including § 523(a)(4) and (a)(6)); In re Suarez, 400 B.R. at 738-39 (applying § 523(a)(6)).

Accordingly, the bankruptcy court did not err in determining the Third Amended Arizona Judgment was excepted from discharge under § 523(a)(4) and (a)(6).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

-26-